The opinion of the court was delivered by
Huston, J.
William Barton had obtained a judgment in the Court of Common Pleas of Fayette county, against N. Mitchell, for eighty dollars, which he assigned to S. Wolverton, who issued execution, and for default in executing or returning that execution, this suit was brought and narr. filed, alleging the breach in relation to the execution for the use of Wolverton. This suit was to October, 1825; the sheriff’s bond was dated in October, 1S20. At January, Term, 1827, a motion was made for leave to amend the narr., which was granted. William Barton had another suit against Mitchell, on which he had a judgment, and had issued execution to the same sheriff. This last judgment was not even alleged in the record to have been assigned to Wolverton, nor did it appear that he had any interest in it; the court below was of opinion that this proceeding was all right, and a general verdict was found for the plaintiff.
By the act of assembly, a suit cannot be sustained on the bond or recognizance against the sheriff’s sureties, unless the same-shall be instituted within five years from the date of the bond. The act says, “ whenever the Commonwealth, or any individual or individuals shall be aggrieved by the misconduct of any sheriff, it shall, and may be lawful, as often as the case may require, to institute actions, &c.; and if upon such suit it shall be proved what damage hath been sustained, and a verdict and judgment shall thereupon be given, execution shall issue for so much only as shall be found by the verdict and judgment with costs: which suit may be instituted, and the like proceedings had, as often as damage shall be so as aforesaid ascertained.”
*369 By the old law a suit was brought in the name of the commonwealth only, and when judgment'was entered for the whole penalty, a scire facias on it issued for the use of any person aggrieved. Under, this law, each individual must sue on the bond or recognizance, to recover for his own damage: no two, not parties to the original suit, or not claiming under the parties to the original suit can join; much less can a suit originally brought by and for one only, be sued for another, or an indefinite number of other persons; especially, if by such proceeding, it is attempted to make the bail liable, contrary to the law limiting their responsibility to suits instituted within five years.'
In the suit as instituted, William Barton had no interest, was not liable for costs, could not release it; it was Wolverton's action for his benefit, it cannot be used to recover damages for Wolverton, and also for Barton, or for any other person than Wolverton, or some person claiming under, or through him; much less can it be used to make the bail liable, when by law they were discharged.
There was also a bill of exceptions to testimony; at a sale made by the sheriff, he struck down an article of property to Mr. Flinn. Mr. Bouvier, the attorney of the plaintiff, and, who issued the execution, came and requested Flinn to give up his purchase, and to permit the property to be returned to a Mr. Long, which was agreed to, and so done. Bouvier then agreed to take Long for the price-of the article so returned to him, and discharged the sheriff so far. This was offered to be proved by Mr. Flinn; the testimony was objected to, and not admitted.
In Pennsylvania the professions of attorney, and counsellor at law, are not distinct, the same person conducts the cause in all its stages, and it has not' been considered that his authority ceases, when judgment is obtained; a power of attorney is never given or filed, unless demanded by the other party, which does not happen in one case of fifty thousand, and then if procured after demand, it is sufficient; the attorney is in some degree the agent as well as lawyer of the plaintiff; when execution has issued, he often gives time to the defendant, and directs the sheriff to postpone a sale advertised; and so far as I know, this has always been taken as a justification to the sheriff for not selling. Such discretionary powers are necessary for the plaintiff’s interest: without the exercise of them, many times, and under many circumstances, properly, sufficient to pay the debt, would not sell for enough to pay the costs. Although extensive authority has been exercised by the attorneys, we have had few cases of complaint, and the court has seldom been called on to state the limits of their authority, or of their responsibility to their clients; a circumstance highly honourable to the profession. To look into the practice of other countries or other states, and apply the rules adopted in other circumstances and in consequence of different customs, would not, probably, pro *370 duce a result agreeable to the principles of law or justice. If a plaintiff wishes his attorney to have less power than is usually exercised, it would seem more consonant to right, to give him in writing a special and limited authority, than to bring in the law of another country, and say, in opposition to constant and general understanding, that the power of his attorney is to be judged of by that law. As between the client and the attorney, I would, however, say the responsibility of the latter is as great and as strict here, as in any country; I mean where want of good faith, or attention to the cause is alleged; but in the exercise of the discretionary power usually exercised, I would not hold an attorney liable where he acted honestly, and in a way he thought was for the interest of his client.
In the present case, if tire attorney had told the sheriff to abstain from selling, he would have obeyed, must have obeyed. If the attorney had bid for the property and bought it, the attorney’s receipt would have been good. If Long had paid him for this article, and he had paid the money to the attorney, his receipt would discharge the sheriff. In short, the constant usage of the country justified the sheriff in the oaase he took; the constant usage and practice informed the plaintiff that attorneys exercised such power: the evidence then ought to have been received.
If any attorney shall be guilty of unfair management, if any sheriff shall know or suspect, much more shall partake in such management, it must take the fate of all unfairness; and, in the case of officers of the court, I would require the strictest integrity. Here there is no allegation of fraudulent conduct or intention in the sheriff. The evidence ought to have gone to the jury.
Judgment reversed, and a venire facias de novo awarded.