THE BANK OF MOBILE v. HUGGINS, adm'r of VEDDER, survivor of BLAIR & VEDDER.

1. When there are several counts to a declaration, a general demurrer to the whole can be sustained, only in the event that there is a misjoinder of actions if any one of the counts, are sufficient.

2. Whenever a contract includes a bailment, and it is broken by the *bailee*, either case or assumpsit may be brought by the *bailor*. A count, setting out a contract, to perform specific acts, with respect to a note deposited for collection, and showing a breach of the contract, is a declaration in assumpsit.

3. When a note is deposited with a Bank for collection, and no special agreement is made, the contract to be implied, is one of agency; and no other duties are imposed by law, on a Bank, different from those imposed on any other agent. The first duty of an agent, in such a case is, to follow his instructions; if none are given, it is his duty to present the note at the time and place fixed for payment; or if no place is designated, to use due diligence to make a demand; if payment is refused, it is then his duty to give immediate notice to his principal, that he may take the measures necessary for his own security. These duties are imposed by the general law of agency; but others may arise out of local laws; as if damages are given on the protest of a note; or if a protest is essential to fix the liabilities of other parties.

4. In the absence of any local custom, it is not incumbent on the agent to notify the indorsers, unless he is directed by his principal to do so; nor to cause the note to be protested, unless this is necessary to fix the liability of other parties; or to give his principal some advantage, which, otherwise, the law would not accord to him.

5. An agent, in case of a neglect of duty, is liable to nominal damages upon the breach of his contract, and if any loss has been sustained by the principal, in consequence of the neglect, he is liable to the actual loss incurred, but not to any greater extent.

6. The discharge of a solvent party to a note, in consequence of an act of negli" gence, by the agent, is not an *actual loss*, when there are other solvent parties' who remain bound to the principal; and it rests with the principal to show, be" fore he is entitled to recover the amount of the note as damages, that the par- ties who remain bound to him, are unable to pay.

7. An agent is not liable for an omission to notify the indorsers of a note, deposi- ted with him for collection, unless he is instructed to do so; or unless he omits to inform his principal of the default.

8. When a note is withdrawn by the owner from the Bank, where it was deposi- ted for collection, the Bank is not discharged from its liability to damages, if it has omitted to give notice to the principal, of the non-payment.

9. When a note is deposited with a Bank for collection, and an entry is made on the bank book of the depositor, the contract of agency is not waived or rescind- ed, by cancelling the entry in the bank book. The only effect of such a can- cellation is, to show that the note has been returned to the depositor, who is au- thorised to deal with it as he pleases.

Writ of error to the Circuit Court of Mobile county.

ACTION of assumpsit. The first count of the declaration is on a special contract, between the Bank of Mobile and Blair and Vedder, by which the Bank, in consideration that Blair and Vedder would deposit in its custody a certain note, then running to maturity, made by one Roberts, and endorsed by one Mayrant, and also by Blair and Vedder, who owned it, promised and undertook, that the Bank would cause the note to be presented for payment, and demand the same at the place where it was made payable, on the day provided for payment, and, in case the same was not paid, to protest it in due course of law. The breach of this contract is alleged to be, that the Bank did not demand payment; nor cause the note to be pro- tested, and give notice of the non-payment to Blair and Vedder.

The second count describes the contract as one, to place the note in the hands of a notary, to be protested, if payment was not made on the day it became due. The breach is as- signed, that the Bank did not cause the note to be placed in the hands of a notary, whereby the Bank became liable to pay, &c. concluding with a *super se assumpsit* for the amount of the note.

The third count is a general one, including the common counts, for goods sold, money lent, paid, had and received, and due on account stated.

The defendant demurred generally to the whole declaration; but the demurrer being overruled, the plea of *non assumpsit*

was pleaded, and on this issue, the cause was tried by a jury, who returned a verdict for the plaintiffs, on which judgment was rendered for the amount of the note, and interest.

In the course of the trial, a bill of exceptions was sealed, at the instance of the Bank, which discloses that the plaintiffs offered evidence tending to prove that the note was deposited with the Bank of Mobile for collection; and that the Bank failed to have it protested; and also failed to give notice to Mayrant, the indorser.

It was also proved, that the note was indorsed first by Mayrant; second, by Blair and Vedder; that in consequence of a mistake on the part of the officers of the Bank, with respect to the time when the note became due, no steps were taken to notify the indorsers. There was no evidence that the indorsers were notified; or that notice of the non-payment was given to Blair and Vedder.

1. The Circuit Court charged the jury, if the Bank received the note for collection, then it was the duty of the Bank to cause notice to be given to the indorsers; and if the indorser, Mayrant, was discharged, in consequence of the failure of the Bank to take measures to charge the indorsers, by notice of the non-payment of the note, then the Bank was liable.

2. The defendant gave in evidence, facts, tending to prove that Mayrant, the indorser of the note, was insolvent at the time when the note became due; and, on this evidence, requested the Court to charge the jury, that if Mayrant was insolvent, the plaintiffs had sustained no damage by the failure of the. Bank to give him notice; and in that event, the plaintiff could not recover without proving damages. This charge was refused, and the jury were instructed that the insolvency of the indorser did not preclude the plaintiffs from maintaining the action; that the jury must determine the damages from a consideration of the whole of the evidence, and if the plaintiffs made out their case, they were entitled to nominal or full damages, as the evidence warranted.

3. The defendant requested the Court to charge the jury, that protest of the note, and notice to the maker, not being necessary, the plaintiffs could not recover without showing that the maker was insolvent. This was refused by the Court.

4. The defendent offered evidence, tending to show, that the

note was received from the Bank, by Blair and Vedder, soon after it became due, and that it was by them deposited with an attorney for collection; that it remained in the hands of the attorney for several months; after which, it was offered to the Bank, and payment demanded; it was also proved, that the receipt on the bank book of Blair and Vedder, where the note was entered, was cancelled. The defendants requested the Court to charge the jury, if they believed that Blair and Vedder took the note from the Bank, and held and used it as their own, for several months, and then, for the first time, returned it to the Bank and demanded payment, the Bank, in such event, was not liable.

The Court refused to give this charge, as asked for, but instructed the jury, that the Bank, by assuming to collect the note, had engaged to give notice to the indorsers, or to the plaintiffs; that if the Bank failed to give this notice, it made itself liable; that if the plaintiffs, after receiving the note from the Bank, had received payment thereof, either in part, or in full, the defendant might show it, and reduce the damages to the extent of the payment.

5. The Court refused to charge the jury that the Bank was not liable, if the plaintiffs, when they received the note from the Bank, cancelled the receipt which it had given for the same.

6. The Court also refused to charge the jury that the plaintiffs could not recover, if Mayrant, the indorser, was insolvent, when they offered to return the note to the Bank.

7. And further refused to charge the jury, that the plaintiffs should not have received the note from the Bank, if they intended to hold the Bank liable.

The defendant excepted to the several charges given, and refused to be given.

The Bank now prosecutes this writ of error, and here assigns as causes of reversal, that the Circuit Court erred:

1. In not sustaining the demurrer to the declaration.

2. In the several charges given and refused.

GAYLE, for the plaintiff in error, insisted that the special counts were substantially counts *in case,* and therefore, could not, properly, be joined with the common counts in *assumpsit.* The instructions given the jury, contemplate the Bank as liable

for the *amount* of the note, in consequence of the failure to protest and give notice to the indorser. But it is clear, that the liability was only to the extent of the damages *actually sustained;* and not even those if the contract was determined by the cancellation of the receipt given by the Bank.

CAMPBELL, contra, contended, that the instructions given were substantially correct; they assume, that as the Bank undertook the collection of this note, it became liable by the omission to notify the endorser, or the plaintiffs. The extent of the liability was not determined by the Court, but was, on the contrary, left to the jury to be determined by them, from all the circumstances. This view is fully sustained by many cases. Smedes v. Bank of Utica, 20 John. 372; S. C. on error, 3 Cowen, 663; McKensler v. Bank of Utica, 9 Wend. 46; S. C. on error, 11 ib. 473; Bank at Montgomery v. Knox, 1 Ala. Rep. N. S. 148.

The Bank, by its omission to give the necessary notice, made the note its own, and became liable to the plaintiffs *for the whole amount,* if any solvent party was discharged by the negligence. Prichard v. The Louisiana Bank, 2 Louis. Rep. 415 ; Durnford v. Pattison, 7 Martin, 460; Miranda v. The City Bank. 6 Louis. Rep. 741; Crawford v. Louisiana State Bank, 1 Martin, N. S. 214; Montillet v. Bank U. S. ib. 365; Bank of Washington v. Triplett & Neele, 1 Peters, 26.

Here, it was shewn, that a party able to satisfy the note, was discharged; and if the maker of the note was solvent and able to pay, it was incumbent on the defendant to show the fact in mitigation of damages, when it is conceded that this evidence could properly be received for such a purpose. Crawford v. Louisiana State Bank, 1 Martin, N.S. 214; St. John v. O'Connell, 7 Porter, 466 ; Trotter v. Crockett, 2 Porter, 410.

All the charges which were requested by the defendant, with regard to the main question, assume that the Bank was not *liable,* if any of the parties to the note were solvent. The liability was incurred when the Bank omitted to give the notice, and no proof of actual damage was necessary on the part of the plaintiffs. Allen. v. Sudam, 17 Wend. 368; VanWart v. Woolley, 3 B. & C. 439; S. C. at *Nisi Prius,* 5 M. & M. 526; 1 Livermore on Agency, 398. If the Court had been requested to instruct the jury as to the *extent* of the liability, the ques-

tions now argued might have arisen; but, as no such request was made, the Court was right in refusing the instructions in the terms they were demanded.

The judgment of the Circuit Court was reversed at the last January term, but a re-hearing was afterwards allowed, on the application of the defendants in error. At this term, the case was re-argued by CAMPBELL for the defendant in error.

GOLDTHWAITE, J.—1. As the demurrer is a general one to the whole declaration, according to the established course of practice, it can be sustained only in the event, that all of the several counts are defective ; or unless there is a misjoinder of actions. Pettigrew v. Pettigrew, 1 Stewart, 580. A critical examination into the correctness of the special counts, is unnecessary, because, if these were admitted to be defective, the result would not be varied, so far as regard is had to the judgment on the demurrer, inasmuch as the common counts, against which no objection is made, are sufficient to sustain the declaration, if there is no misjoinder.

2. Whenever a contract includes a bailment, and it is broken by the *bailee,* either case or assumpsit may be sustained by the *bailor,* at his option ; if he declares in case, the fraud or negligence of the *bailee* constitutes the *gravamen* of the charge; if in assumpsit, then the promise and undertaking, with its breach, constitutes the ground of the action. 1 Chitty Plead. 153, and cases there cited. On looking into the special counts, we find each of them to contain the distinct averment, of a contract to perform specific acts, with reference to a note deposited for collection; and it is averred, that these acts have not been performed. We think it very clear, that both these counts are in assumpsit, and not in case ; consequently, the objection of a misjoinder of actions, is not supported by the record. We may remark, that one of these counts concludes with a *super se assumpsit,* for the amount of the note, but this irregularity can only be reached by a special demurrer, as enough without it would remain to make a perfect declaration.

3. The instructions given and refused to be given to the jury, are numerous, and it will be most convenient, before entering upon the particular consideration of each, to ascertain what duties were imposed by law on the Bank, when it received

this note, under the circumstances disclosed by the bill of exceptions; and then to determine what the extent of the liability arising out of a failure. It does not appear that any special agreement was entered into between the owners of the note and the Bank; but the contract is to be implied, from the fact that the note was deposited or placed with the bank for collection; the note is described as having been payable at the bank.

[ This, then, seems to be the case of a naked agency; for there is nothing to vary the law of the case, in the fact, that the agent is a banking corporation. No other duties are imposed on such a corporation, which are not imposed on any other agent, possessing skill in the particular business entrusted to his care. / What then is the duty of an agent, with whom a note is deposited for collection? His first duty, unquestionably, is to follow, with precision, such instructions as may be given to him by his principal; and in the absence of any specific instructions, he is bound to present the note at the time and place fixed for payment; or, if no place is designated by the note, to use due diligence to make a demand. If payment is refused, it is then his duty to give immediate notice to his principal, that he may take the necessary measures for his own security. Paley on Agency, 6, 37; Beame's Lex Mer. 431; Van Wart *v.* Woolley, 3 B. & C. 439.

Thus far the duties are imposed by the general law of agency, and the law merchant; but doubtless, other duties may arise out of local laws; as if damages are given upon the protest of a bill or note; or, if a protest is essential to fix the liability of any party to it.

4. But, in the absence of a local custom or usage, we do not consider it incumbent on an agent to notify the indorsers, unless he has particular instructions from his principal to do so. Nor do we consider it the agent's duty to cause a note to be protested, unless this is necessary to fix the liability of anterior parties, or to give his principal some advantage, which, otherwise, the law would not accord to him. It is true, that the contrary of this seems to have been settled by the Supreme Court of New York, in Smedes *v.* The Utica Bank, 20 John. 372; S. C. on error, 3 Cowen, 663; and also in McKensler *v.* The Bank of Utica, 9 Wend. 46; S. C. on error, 11 Wend. 473.

In the case first cited, the evidence showed a local custom,

that the Banks notified all the indorsers ; but the Court consi-
dered this to be the general law of agency. The same doc-
trine has also been held by the Supreme Court of Louisiana,
in a series of cases, which we shall hereafter take occasion to
examine, in connexion with another aspect of this case.

We are reluctantly compelled to differ from these Courts,
because, it seems obvious to us that local custom has been con-
sidered by them as the general law of agency. If it be true,
that an agent, or even a notary, is bound by law, without in-
structions, to give notice to the indorsers of a note, the inquiry
might be made—how is the residence of each of them to be
known to him ; and, if not, from whom is he to derive the ne-
cessary information, to enable his action to be efficient for the
security of the holder, and for indemnity to himself ? In the
very nature of things, there are matters, of which the agent
and notary, both, may, and oftentimes must, be entirely igno-
rant ; and to impose upon either of them the necessity of as-
certaining facts, with certainty, would be an intolerable bur-
then. Independent of the fact, that these decisions are in di-
rect conflict with the elementary writers, Beames and Paley,
whose writings have almost the weight of adjudication, they
are adverse to the opinions, of some at least, of the most distin-
guished jurists of our own country. Chief-Justice Parsons,
says " a person appointed a factor, to cause a bill to be present-
ed, is intrusted with no other powers, and it is his duty to noti-
fy his principal. The factor may not know to which of the
prior parties the principal intends to resort ; and, if he does, he
may not know their domicils ; as he has no interest in the bill,
or privity with the parties." Colt v. Noble, 5 Mass. 157. The
contest in that case was, between the holder and the indorser
of a bill, the latter claiming to be discharged, because notice of
the dishonor of the bill was not given to him by the factor ; and
when if it had been so given, it would have reached him some
*months* sooner than it did from the holder, who resided at Ma-
dras. The same doctrine is held in the case of Tunno v. La-
gue, 2 Johns. Cases, 1.

5. The duty of an agent, with respect to a note deposited
with him for collection, being thus ascertained, the more im-
portant question arises as to the *extent* of his liability, in case of
default. It is apparent, that a mere agency is created when a

note is deposited for collection, and we find it difficult to ima-
gine any circumstances which can cast on one standing in this
relation, a liability to a greater extent than the actual amount
of injury sustained by the principal. To permit a recovery for
more, would be to inflict damages on the agent, as a penalty for
his misconduct merely; and beyond the damage sustained, the
principal would seem to have no better title than an indifferent
person.

It is well observed by one of our own elementary writers,
that " the loss which the principal has sustained, by reason of
the negligence of his agent, is to be taken as the true measure
of damages, in an action founded upon that negligence. This
appears to follow from the very definition of damages, they be-
ing a recompense given by the jury for the wrong or injury
done to the party." 1 Livermore on Agency, 398. The same
principle seems to have furnished the rule for the decision in the
case of Russell v. Palmer. 2 Wilson, 325. The defendant,
as the attorney of the plaintiff, had recovered a judgment against
a debtor, and omitted to charge him by a *ca. sa.* after he had
been surrendered by his bail; in consequence of which he was
superseded. The action was *case,* for the negligence, and it
was ruled by the Judge who tried the case, that the defendant
was liable for the whole debt; but the Court awarded a new
trial on account of the misdirection, because the action sound-
ed merely in damages, and the jury ought to have been left at
liberty to find what damages they thought fit. On the last
trial, the jury found only £500, (the debt was £3000,) *as it
appeared the debtor was not perfectly insolvent.* Now, it
seems to be evident, from this case, that if the plaintiff, notwith-
standing the debtor had been discharged from custody, by the
negligence of the defendant, could by *fi. fa.* have obtained sa-
tisfaction of his judgment, nominal damages merely would have
been given.

In the case before us, can the owner of the note be said to
have sustained any more than nominal damages, if he has a per-
fect remedy on it against a solvent party?

In the case cited from Wilson, the plaintiff had two reme-
dies; one by *ca. sa.,* which, by the common law, was a *satis-
faction* of the debt; and the other, was by a *fi. fa.,* which
might be productive or otherwise. The debtor is discharged

from the confinement, by the negligence of the defendant, and so far as this remedy was concerned, the satisfaction was lost; but the other remedy remained; *and because it appeared that the debtor was not wholly insolvent*, they only found a sum much less than the debt, which sum, it is fair to presume, was that which the plaintiff could not recover by his other remedy, the *fi. fa.*

In the present case, if the maker of the note is solvent, it can not be said that the owners have sustained *actual damage*, to the amount of the note, although the indorser has been discharged. Indeed, this very question is noticed by Beames, who says " when any person has bills sent to him to procure an acceptance, with directions to return them, or hold them at the order of the seconds, &c., and the person to whom they are sent, either forgets or neglects to demand acceptance, or he suffers the party on whom they are drawn, to delay their acceptance, and the drawer, in the *interim*, fail, he is certainly very blame-worthy for his carelessness and disregard of complying with his obligation ; *though this will not subject him to the payment of their value.*" He adds, " But if he should be urged to procure *acceptance and payment* of a bill sent to him, and should protract or defer the getting it done, and the acceptant, being ignorant of the drawer's circumstances, declares he would have accepted it, had it been timely presented ; the person guilty of the neglect *will be obliged to make good the loss* that has happened to his correspondent, *purely through his omission and carelessness.*" Beame's Lex Mer.—bills of ex., fig. 18.

Some reliance is placed, by the defendant in error, on an expression of Chief Justice Marshall, in the case of The Bank of Washington v. Triplett & Neale, (1 Peters, 26.) The facts of that case were, that a bill drawn by one Briscoe, of Alexandria, on Carnes, at Washington city, payable to, and indorsed by Triplett & Neale, was sent to the Bank to procure acceptance and payment. When the bill was presented, at the residence of Carnes, for acceptance, he was absent in Baltimore. The bill was not protested for non-acceptance, and after protest for non-payment, notice was given to Briscoe, who refused to pay it. Evidence was also given, as to the incompetency of Carnes and Briscoe, to discharge the bill, at the time of its

non-payment; and that since that period, the latter had inherited an estate. The bill was dated, 19th June, 1817, payable four months after date, and was protested for non-payment, on the 24th day of October, the fourth day after that expressed on the face of the bill, as the day of payment. Judge Marshall observes: "The first prayer of the .defendants, in the Circuit Court, being to instruct the jnry that, upon the whole evidence the plaintiff ought not to recover; if it might properly be granted in any case, in which any testimony was offered, certainly ought not to have been granted, if any possible construction of that testimony would support the action. The liability of the Bank, for the bill placed in its hands for collection, undoubtedly depends on the question, whether reasonable and due diligence, has been used, in the performance of its duty. To maintain the charge of negligence, the counsel for Triplett & Neale, have alleged the failure to give notice of the non-acceptance of the bill, and failure to demand payment in proper time. The counsel for the Bank, have brought the first question more distinctly into view, by a more definite instruction, which was afterwards asked respecting it, and its consideration will be deferred until that prayer shall be discussed; but the first will be disposed of under the general prayer. *Unquestionably, by failing to demand payment in time, the Bank would make the bill its own, and would become liable to Triplett & Neale for its amount.* The inquiry, therefore, is into the fact."

It is evident, we think, that the learned and lamented Judge was not preparing to discuss the general rule, but was about to enter upon the particular one, applicable to the facts of that case; for he says, the prayer ought to have been refused, *if any possible construction of the testimony would support the action.* As to the extent of the damages, under the proof, the Bank, if liable at all, were *unquestionably* so to the full amount of the bill, because Briscoe was shown to be solvent. This case, then, in our opinion, is not a decision upon the point now to be determined.

In Van Wart v. Wooley, 3 B. & C. 439, Lord Tenterden uses an expression similar to that of Judge Marshall, with regard to an agent to whom a bill was remitted for collection, making it his own, by omitting to give his principal notice of its non-acceptance; but the case itself explains the expression, and is a

The Bank of Mobile *v.* Huggins, adm'r, &c.

most satisfactory authority to show that an agent, guilty of negligence, is only liable to the extent of the injury actually sustained by the principal.

Whatever influence the opinion of Judge Marshall, in the case of the Bank of Washington v. Triplett and Neale, may be supposed to have on this question, it must be borne in mind that it was pronounced in January, 1828; but in May, of the same year, we find him giving the question of agency, a full, and we may be permitted to add, a most luminous examination, and he then comes to the conclusion, that one to whom a bill is remitted, or who is in possession of a note, as agent, does not bear the same relation to his principal, that the holder of a bill of exchange does to the drawer or indorser; nor will the same negligence, or omission, that will deprive the holder of recourse, against the previous parties to a bill, make the agent subject to his principal, to the extent of the bill placed in his hands for collection. He also determines, that the relation of principal and agent, is governed by the general rules of law, founded on reason; and if the principal suffers, through the remissness or negligence of the agent, *the actual loss sustained* by the principal, in consequence of such misconduct, is the standard by which his damages must be measured. Hamilton v. Cunningham, 2 Brock. 350. See also Stow v. Bank of Cape Fear, 3 Dev. 408. It has been supposed by the counsel for the defendant in error, that the principle governing this case, was decided by this Court, in the Branch Bank at Montgomery v. Knox & Co. 1 Ala. Rep. N. S 148, but there the *evidence* showed, that solvent parties had been discharged, and those who remained liable, were shown to be wholly insolvent.

It must be admitted, that the cases determined in the Supreme Court of Louisiana, are in conflict with what we consider to be the law. They held, that an agent is bound in the same manner, and to the same extent, as if he was a party to the bill or note; and that he is liable for the amount of the bill or note whenever a solvent party is discharged, although other parties may continue liable who are able to pay. Durnford v. Pattison, 7 Martin, 460; Crawford v. Louisiana State Bank, 1 Martin, N. S. 214, Montillet v. Bank of the United States, ib. 365; Pritchard v. Louisiana State Bank, 2 Louisiana Rep. 415, Miranda v. City Bank, 6 ib. 741. But they also held, that the defaulting

14

agent is entitled to a cession of the note, when a recovery is had.

It is evident, that gross injustice would frequently be wrought to the agent, if a recovery could be had against him by his principal, when there was a solvent party remaining bound, as he has no means by the common law, to compel a cession of the note, and he certainly is invested with no property in it, by the fact, that a recovery is had against him for a negligent default with regard to it; and although a Court of Equity might interfere for his benefit, that cannot alter the law. In every case of this nature, the law implies *some* damages from the breach of the contract, whether actual injury has resulted or otherwise;—Van Wart v. Wooley, 3 B. & C. 439. But our conclusion is, that the extent of the injury, and not the amount of the note, is the proper criterion, by which the damages are to be ascertained; and that no actual damages growing out of the loss of the debt can be said to exist, whilst there remains a solvent party, who is bound for the note. This view of the law imposes on the agent, who is in default, the liability of indemnifying his principal, against all the actual losses which have been sustained in consequence of his negligence.

6. We have now ascertained what is the duty of an agent, with regard to a note deposited with him for collection, and the extent of his liability, in the event of negligence with respect to it. It is further necessary to determine, in what manner the extent of the injury is to be made apparent to a jury.

It is pressed on us with much force, that when the plaintiff has shown the discharge of one of the parties to a note, in consequence of the negligence of the agent, this should, *prima facie,* be considered as evidence, sufficient to charge him with the amount expressed to be due by the note; and the case of Allen v. Sudam, 17 Wend. 368, is relied on to show that a more stringent rule has been settled in New York. In that case, the Court held, that as the jury had no knowledge what the amount of the damage was, except from the proof of the amount of the draft, they ought to find the amount of the draft. It was in evidence, however, that the draft was dated, 21st July, 1833. at two months; it was deposited with the agents on the day of its date, and they forwarded it to the place where it was payable, on the 2d of September; on the 7th, it was presented for

acceptance, and on the 10th, acceptance was refused; the draft was then protested, and returned to the agents on the 16th, who gave notice to the principals on the next day. On the 9th October, the drawer died, insolvent, he having given instructions to the drawees, not to accept, and they stating in evidence, that they would not have accepted the draft if it had been presented earlier. It will be seen that this case is, entirely at variance with the decision in Van Wart v. Wooley, on which it professes to be founded, for in that case, the Court of King's Bench place their judgment on the fact, that inasmuch as the drawer was not discharged by the negligence of the agent, the principal was only entitled to *nominal damages.* We cannot bring our judgments to follow the rule settled in New York, as to the ascertainment of the damages. The general rule of evidence, certainly is, that the affirmative shall be maintained by the party who is presumed to have possession of the necessary information of the fact to be established. The mere production of a paper, with a name signed to it, promising to pay a sum of money, does not import, necessarily, that the paper has any actual value. Its value depends entirely upon the ability of the parties to comply with what they have promised. The knowledge of this ability is to be presumed to be with the person who has an interest in it; and it is difficult to conceive how a mere agent, who is intrusted with the paper only for one specific purpose, in no ways coupled with any interest, can be held to proof of those circumstances on which its value, or its worthlessness, depend.

It is supposed, however, by the counsel for the defendant in error, that this feature of the case, was decided by this Court in St. John v. O'Connell, 7 Porter, 466. The proof in that case was, that the debtors *were solvent*; evidence was offered by the defendant, who had converted the note, that *nulla bona,* had been returned to an execution obtained on the paper converted. The Circuit Court charged the jury, that the measure of damages was the amount of the note, and interest to the time of trial; and this Court held the charge to be correct, *under the circumstances of the case.* There can be no question, we apprehend, of the correctness of this decision, but it has no tendency to support the proposition contended for.

In the case of Stow v. The Bank of Cape Fear, 3 Dev.

408, it was held, in an action similar to this, that the amount of the bill, is not the criterion to govern the jury, in assessing the damages, unless it appears that the plaintiffs had lost that amount of money by the misconduct of the agent. Judge Ruffin, in the same case, shows the true ground of the distinction between an action of this nature, and one against a sheriff for an escape.

If then, the plaintiff is compelled, where there is only one party liable on a bill, in the first instance, and he is discharged by the neglect of the agent, to shew what he has actually lost, we cannot conceive why he is not in the same predicament, where there are more parties than one. If there is yet a solvent party bound to pay, we repeat that the principal cannot be said to have lost his debt through the negligence of the agent, although his remedy, and right also, may be gone, as to other parties. But it is unnecessary for him to ascertain the inability of all, or any of the parties, by suit, if he is prepared to prove, at the trial, either that they are not bound in law, or are unable to pay.

7. If we now proceed to apply the law of the case, as we have ascertained it, it will be seen that the first charge given, is not in accordance with the rules previously stated by us. The instruction was, that it was the duty of the Bank, to cause notice to be given to the indorsers; and if the indorser, Mayrant, was discharged in consequence of the failure of the Bank to take measures to charge the indorsers by notice of the non-payment of the note, then the Bank was liable. It is true, that this charge is somewhat modified by the fourth, which seems to have been intended as a summing up of the law of the case, when the Court says, (in answer to a request by the Bank, to instruct the jury, that it was not liable, in consequence of the plaintiffs having taken the note from its custody and cancelled the entry in their Bank book,) that the Bank, by assuming to collect the note, had engaged to give notice to the indorsers, or to the plaintiffs, that if it failed to give such notice, it made itself liable; that if the plaintiffs, after receiving the note from the Bank, had received payment thereof, either in part, or in full, the defendant might show it and reduce the damages to the extent of the payment. But the modification assumes that the Bank became liable for the amount of the note; and that

The Bank of Mobile v, Huggins, adm'r. &c.

this could only be reduced by proof, on the part of the defendant, that the whole, or a part of it had been paid. In both these particulars, there is error. But in our opinion, the charge is also obnoxious to the objection, that it was well calculated to mislead the the jury from a consideration of a fact, which it was essential for the plaintiffs to have proved, but which it is clear, was not given in evidence. We speak of the third charge which the Court refused. It was properly refused, because the Bank was liable for nominal damages, although there was no evidence of the insolvency of the maker of the note ; but as we have before stated, no actual loss has been sustained by the plaintiffs, if they have still a remedy against a solvent party to the note. This request to charge, although properly refused, when coupled with the one given in answer to the fourth, undoubtedly misled the jury, and we should not hesitate to reverse the judgment for *this*, if no other error was apparent ; and this would be in in accordance with several previous decisions. Sims v. Sims, 7 Porter, 449 ; Tarlton & Bullard v. ——— *supra.*

8. We do not think the Circuit Court erred in refusing to give the charges with reference to the effect of the plaintiff's taking the note out of Bank, after the omission to present it for payment. We have already shown that the Bank was a mere agent for the owners of this note, in this transaction, and the remarks made by us in the case of The Branch of the Bank of the State of Alabama at Montgomery v. Knox & Co. 1 Ala.Rep. N. S. 148, will apply with full force to the facts in this case. The Bank, by its breach of the contract, acquired no right or title to the note ; nor were the principals compelled to discharge it from its liability for its negligent omission, before they were entitled to the note. If the Bank had asserted such a right, and refused the delivery of the note, this would have been proper evidence, to show a conversion. As the Bank had no right to retain the note, no inference of a waiver, or of a return, can be presumed, adverse to the plaintiffs, from the fact of taking it again into their possession. It was their property, and for this reason, they had the right to do with it as they thought proper.

9. The cancellation of the receipt in the Bank book of the plaintiffs, is a matter of no importance whatever. The entry merely evidenced the receipt of the note by the Bank, and

the cancellation of this evidence only showed that the note had been returned to its original proprietors. There is nothing stated, from which an abandonment of the contract, can be properly inferred.

For the errors which we have noticed, the judgment of the Circuit Court is reversed, and the cause remanded for further proceedings.

COLLIER, C. J.—I think it probable, that the judgment of the Circuit Court, may operate injustice to the plaintiff in error, judging alone from the facts recited in the bill of exceptions; but the charge of the Judge to the jury, seems to me entirely consistent with the view, which my brother, GOLDTHWAITE, has taken of the law. Taken as a whole, I think it easy of application, and consequently cannot admit that it was calculated to mislead a jury of ordinary intelligence. That the Bank was only liable to the extent of the damages sustained by the defendant in consequence of the omission to comply with its engagement, has, I think, been well shown; and so the Circuit Court instructed the jury. No question was raised, whether the mere production of the note and the omission of the Bank to give notice was *prima facie*, sufficient to charge the Bank with damages equal to its amount and interest; and the failure to charge specially, on this point, does not authorise a reversal of the judgment.

Considering the bill of exceptions not to be obnoxious to the criticism it has received, I cannot acquiesce in the judgment pronounced by the majority.