Mr. Justice Scott delivered the opinion of the Court. This case is presented on bill of exceptions to the overruling of a motion for a new trial. It is an action against an attorney at law for negligence, alleging that thereby a claim placed in his hands for collection was lost. The jury found for the defendant and there was judgment accordingly. Reasonable diligence and skill constitute the measure of an attorneys engagement with his client. He is liable only for gross negligence or gross ignorance in the performance of his professional duties ; and this is a question of fact to be determined by the jury, and is sometimes to be ascertained by the evidence of those who are conversant with and skilled in the same kind of business, (as the cases of Russell vs. Palmer, 2 Wil. 325, and of Godfrey vs. Dalton, 6 Bing. 460.) These doctrines are sustained by all the authorities with unanimity and distinctness. 4 Burr. 2060. 3 Camp. 17, 19. 2 Bos. & Pul. 357. 4 Ala. 594. 2 Porter 210. 3 How. (Miss.) 317 2 Greenl. Ev., sec. 144,p. 137. Lord Brougham said, in a late case, “It is of the very essence of this action that there should be negligence of a crass?, description,” and “ therefore the record must bring before the court a case of that kind, either by stating such facts as no man, who reads it, will not at once perceive, although without its being alleged in terms, to be a case crassa negligentia — something so clear that no man can doubt it; or if that should not be the case, then he must use the very averment that it was crassa negligen-tia” And Lord Campbell, the present Chief Justice of England, said, in a still more recent pase, when speaking of the identity of the law of Scotland and England in this particular, that, as to this point, “ The law must be the same in all countries where law has been considered as a science.” As, in the very nature of things, a charge of this nature, if well founded, must seriously affect the professional character of the attorney, he is entitled, to the fullest extent, to the benefit of that rule of universal application extending to all the relations of society, that every one shall be presumed to have discharged his legal and moral obligations until the contrary shall be made to appear. (12 Wheaton 60, 70. 4 Ohio 354. 3 Gill & John. R. 103. 8 Conn. R. 134. 2 Car. & P. 557.) And, when made to appear, the extent of the damages that have resulted, must also be affirmatively shown, as in the case where the amount of a note is alleged to have been lost by his negligence, it must be shown that it is a subsisting debt against the maker, and also that he was solvent. And, unless the latter be shown, he would be liable only for nominal damages, and, under no circumstances, would he be liable for more than the actual damage that the client has sustained by reason of the negligence. 2 Stark. Ev. 135. 1 Saund. Pl. Sf Ev. 196. Mardis ad. vs. Shackleford, 4 Ala. 505. Bank of Mobile vs. Huggins, 3 Ala. 213. 2 Greenl. Ev., sec. 144, p. 141. Dearborn vs. Dearborn, 15 Mass. 316. Crooker vs. Hutcherson, 2 Chipm. 117. Huntington vs. Rumnill, 3 Day R. 390. It seems to be now generally conceded in this country that the authority of an attorney at law over his client’s cause continues not only until the judgment and a year and a day afterwards, as is said in the old books ; but if the judgment be not satisfied and is continued in force, that his authority will be prolonged accordingly. How this change in the law has been wrought, it is not important to inquire; doubtless, however, by a gradual process, not unlike that by which the custom of merchants was interwoven into the law. (Tucker Lec., B. 3, p. 46. 2 Greenl. Ev., 2 ed., sec. 141, p. 134, and 145, p. 144.) When first brought into court,' these customs were matters of fact, and merchants were examined to prove them : afterwards, when legal decisions had been made upon them, parties and courts took notice of them without being specially stated; and thus they became a part of the law of the land, and doubtless it was in reference to this process that Lord Mansfield remarked, in Edie et al. vs. East India Comp., (2 Burr. 1222,) that “ he was wrong in having permitted merchants to give evidence of a custom on which there had been such legal decision,” As authority and duty, in the relation of client and attorney, are correlative terms, in the same sense that right and obligation are so, in a general sense, it results from the law, as it now stands, that, when an attorney undertakes the collection of a debt, it becomes his duty to sue out all process, both mesne and final, necessary to effect that object; and consequently that he must not only sue out the first process of execution, but all such that may become necessary. This undoubtedly is the true general doctrine on this subject qualified however, as will be presently seen by a pervading principle that fairly grows out of the peculiar character of the attorney’s functions. But although it is his duty thus to pursue his client’s cause through all its stages, he is not imperiously bound to institute new collateral suits without special instructions to do so, — as actions against the sheriff or clerk for the failure of their duty in the issuance or service of process. He should pursue bail, however, and those who may have become bound with the defendant, either before or after judgment, in the progress of the suit. Nor is he bound to attend in person to the levy of an execution, or to search out for property, out of which to make the debt: this is the business of the sheriff. Nor is he liable for any of the short comings of that officer. But, in reference to all these professional duties, the courts have recognized a principle to which we have already alluded, that does not, by any means, move the line between reasonable diligence and crassa negligeniia, and thus in fact place the attorney further from responsibility to his client; but so far as its operation is, in any sort to his protection, it is so only by its influence upon the determination of the question of fact whether or net the act or omission complained of, did really amount to that degree of crassitude for which the law holds him liable. This principle is that the attorney will always be justified in ceasing to proceed with his client’s cause (unless specially instructed to go on) whenever he shall be bona fide influenced to this course by a prudent regal'd for the interest of his client. (J. & Z. Crooker vs. Hutchinson & Cushman, 2 Chip. (Vt.) R. 117. 2 Greenl. Ev., 2 ed., sec. 145, p. 140.) This principle would seem to grow directly out of the peculiar character of the functions of an attorney at law and to be founded on sound public policy. For, in the nature of things, these duties cannot in general be performed in a manner to subserve the true interest of the client, if limited to that strict line of routine conduct which is chalked out by the law as the pathway for ordinary agents, and it is therefore inevitable that in the discharge of these duties they must be entrusted with a large and liberal share of discretion. Hence the extreme difficulty of defining with accuracy that exact limit by which the skill and diligence are bounded, which an attorney undertakes to furnish in the conduct of the cause, or to trace precisely the dividing line between that reasonable skill and diligence which satisfy his undertaking and that crasm neg-ligentia or lata culpa, for which he is undoubtedly responsible. “ Such discretionary powers,” says Judge Huston, in delivering the opinion of the court in Lynch et al. vs. The Commonwealth, use, &c., (16 Serg. & Rawle 368,) “ are necessary for the plaintiff’s interest: without the exercise of them, many times and under many circumstances, property sufficient to pay the debt would not sell for enough to pay the cost.” Again, he says : “ Although extensive authority has been exercised by the attorneys, we have had but few cases of complaint, and the courts have been seldom called on to state the limits of their authority or of their responsibility to their clients ; a circumstance highly honorable to the profession.” “ As between the client and attorney, I would say, however, the responsibility of the latter is as great and as strict here as in any country. I mean where want of good faith or attention to the cause is alleged: but, in the exercise of the discretionary power usually exercised, I would not hold an attorney liable when he acted honestly and in a way he thought- was for the interest of his client.” And if the rule was otherwise, the practice of the profession would be, in a high degree, hazardous, especially in this country, where the pecuniary condition of men frequently change through vicissitude of apparent prosperity and adversity in rapid succession; as it would exclude all discretion about continuing the prosecution of doubtful claims and give safety to the attorney only in a continuous suing out of successive process of execution, or in express leave from his client to suspend operations, which it would often be exceedingly inconvenient to obtain, (8 Mass. 51,) and, when obtained, not less inconvenient to preserve the evidence by which his safety was secured. And hence, although it was laid down in Dearborn vs. Dearborn, (15 Mass. 319,) in substance, that the attorney could not excuse himself for neglecting seasonably to sue out process in continuation of regular steps in the collection of a demand, unless he gave notice to his client and requested specific instructions, this rule was modified in the subsequent case that we have cited from 2 Chip., where the case of Dearborn vs. Dearborn was before the court and its doctrine so qualified by laying down, as we have done, that in cases where the course of the attorney was superinduced, bona fide, by a prudent regard to the interest of his client, he might be justified in ceasing to send out process of execution without having first given notice to his client and requested further instructions. And it was upon the same foundation, doubtless, that Lord Mansfield said, in Pitt vs. Yaldon, (4 Burr. 2060,) when speaking of crass a negligerttia for want of skill and knowledge, “ That part of the profession, which is carried on by attorneys, is liberal and reputable as well as useful to the public, when they conduct themselves with honor and integrity; and they ought to be protected when they act to the best of their skill and knowledge. But every man is liable to error; and I should be very sorry that it should be taken for granted that an attorney is answerable for every error or mistake, and to be punished for it by being charged with the debts which he was employed to recover for his client. Not only counsel but Judges may differ, or doubt, or take time to consider. Therefore an attorney ought not to be liable in cases of reasonable doubt.” So, when the crassa negligentia is alleged for want of prudence and diligence, the attorney should not be held liable in a case of reasonable doubt, especially when the ground of that reasqnable doubt may be evidence tending to show that the act or omission complained of was bona fide super-induced by the exercise of an honest judgment as to what was the true interest of his client. In the case before us, the first ground of the motion for a new trial is the allegation that the verdict was not authorized, and is not sustained by the evidence; and this question we will first examine. Before proceeding to do so, however, we will take the occasion to remark, inasmuch as considerations, touching the honor and integrity of the party defendant in the particular conduct complained of, are in case of this kind always regarded by the jury in making up their verdict, that in the whole mass of testimony in this record there is nothing from which an unfavorable inference in this aspect can be drawn against the defendant. On the contrary, it is clear, from the whole evidence, that he has demeaned himself throughout, in this respect, in a manner altogether unexceptionable. The first writ of execution (being a fi. fa. with an alternate ca. sa. clause) was issued with promptitude, and although there was subsequently a hiatus of near nine months between the return day of this writ of execution and the issuance of the alias, the return of the sheriff on the first, that the defendant “was not to be found in his county,” was, under the state of the case, as to this point, as shown by the testimony, amply sufficient, in our opinion, to exonerate the defendant from gross negligence in this delay. There was also, we think, sufficient legal testimony to authorize the jury to find that, in failing to sue out further process of execution against the defendant, Smith, after the sale of the negro, the defendant in this action was influenced bona fide by a prudent regard- for the interest of his client, and to exonerate him as to this conduct from gross negligence. But we are unable to find any testimony in the record going to exonerate him from the duty of taking further steps against Pullen, the security in the forthcoming bond. This bond had been taken by the sheriff of Arkansas county in discharge of his official duty, and a part of this duty in the premises was to take sufficient security. This, of itself, in the absence of testimony to the contrary, would have authorized a prudent man to infer that Pullen was solvent. And although there was no direct evidence that the defendant knew Pullen’s place of residence, reasonable diligence would have induced him to make enquiry as to the fact from the sheriff of Arkansas county, who had taken the forthcoming bond, if indeed he was uninformed as to this fact. No such exonerating proof was adduced, nor are there any facts or circumstances proven as to Pullen’s pecuniary condition or other collateral facts that authorized a finding that in failing to pursue him with other process the defendant was superindu-ced bona fide by a prudent regard for the interest of his client. Nor is it shown that, in this failure to proceed further, the defendant was controlled in the performance of his duties by any instructions either express or implied from his client. If the judgment upon the forthcoming bond was void, he might have disregarded it and taken other proceedings: if erroneous and not void, he might have taken steps for its reversal. And although it may be void or erroneous, it will not, by any means, follow that for this reason the defendant was necessarily guilty of gross negligence for want of knowledge and skill. (Godfrey vs. Dalton, 6 Bing. 460. 19 Com. Law R. 132. Russell vs. Palmer, 2 Wilson 325. 6 Munford R. 557.) But the defendant took no steps at all, and has failed to develope by his testimony any fact or circumstance by way of excuse, and but for those touching the doubtful pecuniary condition of Mrs. Smith, he would not have excused himself for not taking further steps against her. The fact that process of execution was issued against both Smith and Pullen, and levied upon a negro.boy, who was sold for less than the debt, seems to be relied upon for this purpose. Had the sheriff returned upon this execution that besides this negro there was no other property in his county subject to this execution, this position would have been tenable. But there was no such return, or any intimation whatsoever, that there was no other such property. The fact that this negro sold for less than the debt, is sufficiently accounted for by the circumstance shown in evidence that the property was “ in dispute,” and in consequence the sheriff was indemnified before its sale, find, besides, it seems to have been the same negro that was originally levied upon as the property of Smith, and thus shows nothing as to Pullen’s solvency. As to Pullen’s actual pecuniary condition, one witness testified that he “ had always looked upon Pullen as a poorman but three others testify to his solvency for a period of near twelve months after the defendant had ceased to sue out process against him. After looking, then, at all the testimony, we are of the opinion that the verdict is not fully authorized, and that the evidence falls short of this in failing to show for the defendant any excuse for his failure to take further steps against Pullen. With regard to the instructions given by the court to the jury there was no error in the first and second. The third ought not to have been given because there was no evidence upon which to predicate it, and it was therefore abstract. The fourth was erroneous. After the actual return of the first execution there would have been no irregularity, much less any invincible legal obstacle in issuing again the same or another execution. The fifth was not erroneous; nor did the court err in refusing to give the modification asked. The sixth was irrelevant to the issue and ought not to have been given : and besides it did not state the law correctly. By the common law a sheriff could summon a jury to try the right of property taken by him in execution when the title was doubtful or it was claimed by a third person; and if the verdict was that the property belonged to a third person he was justified in delivering it up. The contrary verdict, however, did not protect him against the suit of the true owner. Yet he was not without relief for the court of law perhaps might interfere if he were still reasonably doubtful about the right, (1 Burr.) or he might file his bill in chancery against the several parties concerned in interest and compel them to interplead and litigate the right in order to ascertain to whom the property belonged.' Snch was the common law. Our statute (Dig.p. 499, sec. S3,) however, has provided that a verdict against the claimant of the property shall be a full indemnity to the sheriff in proceeding to sell and if the verdict be for the claimant he shall sell if sufficiently indemnified by the plaintiff in execution. The seventh instruction was abstract. There was no testimony to authorize it. In giving it there was error. The eighth instruction was also erroneous, and was mischievous, because it had a direct tendency to mislead the jury. We have already made some observations touching this point when noticing the testimony; but will add here by way of showing that this instruction was without warrant in the law, that this was an effort to rest a presumption upon a presumption. The presumption that there was no more property is based upon the presumption that the sheriff did his duty. That is to say, as it was his duty to levy the whole debt if there was sufficient property in his county, as he did not levy the whole debt, ergo, then there was no more property in his county. Now the law will not presume on such a basis as this. Legal presumptions must be based upon facts, not upon presumptions. The ninth instruction was clearly erroneous as the duty to search for property did not rest upon the defendant, as we have already seen; but as this error was not against the plaintiff but the defendant in error, it cuts no figure in the question before us. The court below did not err in refusing the first instruction asked by the plaintiffs and refused, because in its phraseology it imposed the duty upon the defendant of searching for property, otherwise than by the process of the court: and also because it was not so qualified as to allow him the benefit of the testimony in the record going to show that as to Mrs. Smith, he might have been induced to cease to send out process of execution by a bona fide prudent regard for the interst of his client. Nor was there any error in the refusal of the court to give the second instruction asked by the plaintiffs. Because, while dower remains unascertained and until there has been an actual admeasurement by metes and bounds, it is a mere potential interest, amounting to nothing more than a chose in action, and-is not subject to seizure and sale by execution at law. 1 Smedes & Mar. Ch. Rep. 489. 4 Paige 448. 13 Wend. 526. In view then of the whole case we are of opinion that the court erred in refusing the motion for a new trial. The judgment must therefore be reversed, a new trial awarded and the cause remanded to be proceeded with.