CHARLES DEVLAN ET AL., PLAINTIFFS BELOW, DE-
    FENDANTS IN ERROR, v. MARK P. WELLS ET AL.,
    DEFENDANTS BELOW, PLAINTIFFS IN ERROR.

Argued June 29, 1900—Decided November 19, 1900.

1. Upon a proper construction of the contract in this case the plaint-
   iffs' entire claim was due at the time they caused the attachment
   to be issued against the defendant.
2. If the contract required the plaintiffs to give a bond to defend-
   ants for the faithful performance of their work, the defendants
   cannot take advantage of the failure to give such bond after per-
   mitting the plaintiffs to complete their work without exacting the
   bond.
3. The defendants entered an appearance under section 38 of the
   Attachment act without giving bond, and the case went to trial
   on the pleadings and issue joined. *Held*, that the plaintiffs who
   sued out the attachment were entitled to recover in the suit such
   part of their claim as had not matured when the attachment
   issued, as well as the part that had matured.

On error to the Atlantic Circuit Court. The case was tried
at the December Term, 1899, of said Circuit, before Mr. Jus-
tice Ludlow and a jury and a verdict rendered for the
plaintiffs below.

For the plaintiffs in error, *Cole & Thompson.*

For the defendants in error, *Robert E. Stephany.*

The opinion of the court was delivered by

VAN SYCKEL, J. On the 4th day of May, 1899, Devlan &
Maxwell, the plaintiffs, filed an affidavit that M. P. Wells &
Company, the defendants, were non-residents in this state,
and that they owed to said plaintiffs the sum of money in-
volved in this controversy. Thereupon an attachment was
issued out of the Circuit Court of the county of Atlantic at
the suit of said plaintiffs against said defendants.

After the return of said writ, the defendants entered an

appearance to said suit under the thirty-eighth section of the Attachment act without giving bond.

The plaintiffs filed their declaration, to which the defendants pleaded. Issue was joined, and a trial was had on the 13th day of December, 1899, in said Circuit Court, which resulted in a verdict for plaintiffs for the sum of $1,526.88, upon which judgment was duly entered.

It was admitted that at the time of filing the affidavit and issuing the attachment, the sum of $54.69 was due and owing to the plaintiffs, but it was contended by the defendants that although at the time of the trial the balance of the plaintiffs' claim was due and owing from them to the plaintiffs, it was not due at the time the attachment was issued, and the trial justice was requested to instruct the jury that a verdict could be rendered for no more than the $54.69.

To the refusal of the court so to charge, exception was taken, and error is assigned thereon.

Two questions will be considered in disposing of this case:

*First.* Whether the said balance claimed by the plaintiffs was due at the time the attachment was issued?

*Second.* Whether it could be included in the verdict if it was due at the time of the trial of the cause, although not due at the time of issuing the attachment?

In December, 1898, M. P. Wells & Company made a contract with one John L. Kelly to erect for him certain buildings in Atlantic City.

In January, 1899, M. P. Wells & Company made a sub-contract with Devlan & Maxwell for the work, and this litigation has arisen out of the execution of the work by the plaintiffs under the sub-contract.

That part of the contract between the parties to this suit, which is material to the question whether the whole sum claimed by the plaintiffs was both due and owing at the time the attachment was sued out, is as follows:

"Whereas, the said M. P. Wells & Company have entered into articles of agreement with John L. Kelly, of the city of Philadelphia, state of Pennsylvania, for the erection of a

store and apartment house to be located at southwest corner of New York and Atlantic avenues, according to certain plans and specifications therein referred to which said articles, plans and specifications are to be considered as if hereto attached, all information concerning the same being known to said Devlan & Maxwell, and, whereas, the said Devlan & Maxwell has agreed to sub-contract with the said M. P. Wells & Company for a certain portion of the work and materials necessary to be supplied by him in the erection and completion of said building, and, whereas, it has been agreed that, as to so much thereof as has been thus sub-contracted for, the said Devlan & Maxwell for the consideration hereinafter named, is, as between himself and the said M. P. Wells & Company, to stand in the place of the latter, and to do everything in, about and concerning the same, as is provided in said M. P. Wells & Company's contract with the said John L. Kelly, of the city of Philadelphia, subject to all its terms and restrictions, so that the said M. P. Wells & Company shall be indemnified and saved harmless from all loss, cost and charges in and about said portion of work and materials.

"The said price is to be paid the said Devlan & Maxwell in the manner following: When payments are received by said M. P. Wells & Company, proportional amount of same to be paid to said Devlan & Maxwell in proportion to the amount of his work done, reserving therefrom thirty (30) per cent. until the completion of the building in fulfillment of this contract.

"The final payment, with any additions thereto or abatement therefrom, in manner therein provided, will be paid to the said Devlan & Maxwell, his executors, administrators or assigns, upon a full compliance with this contract, and upon a complete release of liens for all materials furnished and for all work done, and an absolute release from claims of any kind that might result in the performance of this contract being furnished to and accepted by the parties of the first part. The architect, S. Hudson Vaughn, having the right to add to, change or modify any part of the plans

of the aforesaid building during its progress. The said Devlan & Maxwell will do what shall thus in the above specified matters be entailed upon the said M. P. Wells & Company, and any such modification shall not effect this contract in regard to the consideration, the time for completion or other matters, unless the conditions thereof shall be reduced to writing and signed by the parties hereto. That the party of the second part shall assume the responsibility and pay for any damages to persons or property during the fulfillment of this contract.

"ANNEX CONTRACT.

"ATLANTIC CITY, N. J., March 8th, 1900.

*"M. P. Wells & Company:*

"GENTLEMEN—We will do the plumbing and gas-fitting in the addition to the southwest side of the Kelly apartment house, being built for J. L. Kelly, for the sum of four hundred and forty ($440) dollars, with the understanding that one hundred ($100) dollars is included for gas fixtures, as provided in the specifications. The above work to be done in accordance with and to the approval of S. Hudson Vaughn, architect. We agree to prosecute the work with such diligence as to not interfere with the said M. P. Wells & Company's contract as to time, and it is further agreed to have the whole plumbing and gas-fitting, as far as we are concerned, finished on or before the said M. P. Wells & Company's time agreement with J. L. Kelly calls for. The said M. P. Wells & Company agree to pay to the said Devlan & Maxwell the sum of four hundred and forty ($440) dollars in the manner as follows:

"Proportionate payments for what has been done when M. P. Wells & Company's moneys become due with J. L. Kelly. Seventy per cent. (70 per cent.) of the contract to be paid during the progress of the work, the balance of thirty per cent. (30 per cent.) to be paid when the work has been completed and accepted by the architect.

"Very respectfully,

"DEVLAN & MAXWELL.

"M. P. WELLS & COMPANY."

Three grounds are relied upon by the defendants to negative the claim that the money for which judgment was recovered was due at the time the attachment was issued:

*First.* That a release of liens was not furnished by the plaintiffs to defendants.

*Second.* That there was no proof that the architect had accepted the work, and that the money was due from Kelly to M. P. Wells & Company.

*Third.* That the plaintiffs did not give bond for the faithful performance of their contract with the defendants.

There is evidence in the case that the plaintiffs, on the 3d of May, did deliver to Wells a release of liens, which the defendants, upon due notice, failed to produce at the trial.

The evidence of the plaintiffs was that it was in the usual form, releasing the buildings from the operation of any lien for the work done by the plaintiffs. The defendants received this release without objection, and on the trial the counsel of the defendants made no specific objection to its form, stating only that he objected to the proof of it because it was not shown that it was within the requirements of the contract. It should now be regarded as sufficient, no claim being made that any attempt has been or can be made to establish any lien against the building for the work of the plaintiffs.

In our judgment, also, the contract will reasonably bear the interpretation that the provision for proportionate payments did not apply to the final payment, and that construction should be adopted to support the judgment below.

All payments, except the final payment, had been made by Kelly to M. P. Wells & Company before this suit was instituted, and hence all proportionate payments to the plaintiffs on the main building were then due.

The final payment to plaintiffs on main building was also due if work had been done to the satisfaction of the architect.

The evidence for plaintiffs is that the entire work was completed by them before May 3d, 1899, after the architect had gone through the building and pointed out all that he required to be done. The architect testifies that he gave

Kelly the final certificate on the 16th of May, 1899, and if the evidence of the plaintiffs is true that no work was done by them after May 3d, the work was then completed to the satisfaction of the architect.

Formal acceptance and certificate is not required for main building.

As to annex, acceptance is required, but that means, in this contract, approval, and there is some evidence of approval and no evidence of disapproval.

The failure to give a bond cannot defeat the plaintiffs' right to recover. If the contract imposed upon them the duty to give a bond, because a bond was required of Wells & Company in their contract with Kelly, which is not conceded, the defendants cannot take advantage of the failure of the plaintiffs in that respect, after permitting them to complete the work without exacting the bond. Such a bond would now have no value, it being admitted that the plaintiffs have duly performed their contract in other respects.

Our conclusion, therefore, is that at the time the attachment was issued the entire claim for which plaintiffs recovered judgment was due and owing.

But if the claim in excess of $54.69 was not due at the time the attachment was sued out, but was due at the time of the trial in the Circuit Court, it was properly included in the verdict and judgment.

Section 54 of the Attachment act provides that any creditor whose debt is not due may apply to the court in the same manner as if it was due, deducting a rebate of legal interest.

Section 75 provides that the Attachment act shall be construed in all courts of judicature in the most liberal manner for the detection of fraud, the advancement of justice, and the benefit of creditors. The right of the plaintiff in attachment, who has been diligent in protecting his interest, to stand upon the same plane with other creditors and to have the benefit of his attachment to secure his debt which is not yet due seems to be undeniable.

Section 14 of the act provides that any creditor of the defendant in attachment, upon filing an affidavit that the

defendant owes him a certain sum therein specified, may enter a rule in the minutes of the court admitting him as a creditor under the attachment.

This provision clearly applies to creditors other than the plaintiff in attachment.

This distinction between plaintiff and creditors who may apply is distinctly made in section 36.

No provision is made in the act requiring or authorizing the plaintiff in attachment to make affidavit and enter a rule in order to be entitled to the benefit of the attachment in respect of his unmatured claims, and, if he is entitled thereto, it must be in virtue of his *status* as plaintiff in the suit. It needed no rule as in case of the other creditors to make him a creditor and prevent discontinuance without his consent. A further affidavit and a rule in his behalf would be a useless formality, and, in practice, has not been resorted to.

Section 38 of the act under which the defendants entered an appearance without bond, provides that after appearance and notice to the plaintiff and creditors who have applied, the suit shall proceed in all respects as if commenced by summons, and no other or further claim shall be put in under such attachment after the entry of such appearance. This means that no other creditor shall be permitted to put in a claim under the attachment, and was not intended to deprive the plaintiffs or creditors who had come in of any right to which they would have been entitled, if appearance had not been entered. The creditors who had been admitted by rule would unquestionably have been entitled to recover on claims not yet matured, and it surely would not be the most liberal and beneficial construction of the statute in favor of creditors to deny the same right to the plaintiffs.

In *Regel* v. *Seagraves,* 17 *Vroom* 295, the Supreme Court held that appearance under the thirty-eighth section affected only creditors who had not previously intervened.

In *Hoppock's Executors* v. *Ramsey,* 1 *Stew. Eq.* 413, Mr. Barker Gummere, sitting as advisory master, said that appearance, under section 38, did not deprive the plaintiff of

his lien; the direction that the suit should proceed in all respects as it commenced, by summons, merely provided for the further conduct of the suit by formal pleadings, issue and trial, and did not impair any lien acquired under it prior to appearance.

The effect of this section of the Attachment act was considered in this court in the case of *Blatchford* v. *Conover,* 13 *Stew. Eq.* 205, 214, where Mr. Justice Depue, in delivering the opinion of the court, says: "It also provides that the suits of the plaintiff and the applying creditors shall thereafter proceed, in all respects, as if commenced by summons. The lien of the attachment is preserved, notwithstanding such appearance, with authority in the court to appoint an auditor with like power in all respects as if such an appearance had not been entered. The legal effect of these sections is to leave the attachment suit, and all proceedings under it precisely as if no appearance had been entered, except that the claims of the plaintiff and the applying creditors, instead of being litigated before the auditor, shall be determined before the court and a jury, the same as if the parties had commenced suits therefor by summons."

In accordance with this declaration, and by a true interpretation of the statute, appearance by the defendant simply changes the tribunal before which debts are to be established, depriving the plaintiff and applying creditors of no right which they had in the absence of appearance, and entitling them to prove before the trial court and jury any demand which could lawfully have been proven before the auditor.

In our judgment, therefore, if any part of the plaintiffs' claim was not due at the time the attachment was sued out, it was nevertheless properly included in the verdict and judgment for the plaintiff.

The judgment below should therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 12.

*For reversal*—None.