THE GUARANTEE TRUST AND SAFE DEPOSIT COMPANY, EXECUTOR OF CATHARINE C. ROBINSON, DECEASED, PROSECUTOR, v. GEORGE NEBEKER.

Submitted July 3, 1902—Decided November 10, 1902.

1. A writ of foreign attachment, having been duly executed, does not become void by failure of the sheriff to return it upon the return day. The plaintiff, if he be not in laches, has the right to require the sheriff to return the writ at any time.

2. On *certiorari* to review an order quashing a writ of attachment, it appearing that the court below based the order to quash solely upon the ground that the writ became void by failure of the sheriff to return it in due season, and that the court had no discretionary power, after three years had elapsed, to validate the return—*Held,* that the order cannot be sustained on the ground that the plaintiff's laches requires the quashing of the writ, because the court below has not passed judgment upon this question, and there may be reasons to excuse the delay.

On *certiorari* to the Camden Circuit Court.

For the prosecutor, *Henry I. Budd, Jr.*

The opinion of the court was delivered by

PITNEY, J. This writ of *certiorari* brings up an order of the Camden Circuit Court quashing a writ of foreign attachment. The attachment was sued out against the defendant by Mrs. Robinson in her lifetime. It was issued and tested November 5th, 1898, returnable November 15th, and was duly executed by the then sheriff of Camden county on the day of its issuance. The only property attached was one boat of nominal value. Shortly after the issuance of the writ the sheriff's term of office expired, and the writ was not returned until more than three years afterwards. Mrs. Robinson died about a year after the issuing of the writ. So far as appears, no attempt was made to prosecute the suit until December 10th, 1901, when two orders were made as if on motion of the plaintiff; by the one it was ordered that the sheriff be

allowed to file the writ and his return thereto within two days, "and that any defects or laches resulting from the failure to file such return heretofore be and the same are hereby corrected;" by the second order the clerk was required to amend the sheriff's return by annexing thereto a description of certain real estate acquired by the defendant after the issuance of the writ. At the time of the making of these orders the original plaintiff in attachment was deceased, and her executor had not as yet been substituted as plaintiff in her stead. These facts being brought to the notice of the court, an order was made on January 29th, 1902, ordering the "attorney of the plaintiff" to show cause why the orders of December 10th should not be vacated, and the writ of attachment quashed. On February 25th the death of Mrs. Robinson was suggested upon the record, and it was ordered that her executor be substituted as plaintiff, and that the cause proceed at the suit of the executor. On February 28th an order was made that the writ of attachment be quashed and set aside. It is this order that is now under review. So far as the case shows, it was made without notice to the executor, but this fact is not assigned as a reason for setting it aside.

It appears from the opinion of the learned circuit judge that the sole ground on which he based the quashing of the writ of attachment was that "the writ became void by the failure of the sheriff to return it until more than three years after its issuance, and that it was not within the power or discretion of the court to validate such a return." This proposition is based upon the view that the return of a writ of attachment is a necessary part of its execution, so that it cannot be held to be actually served until it is returned. It is said that in this respect an attachment differs from a summons, of which service is made either personally or by leaving a copy at the defendant's place of abode; while under the Attachment act constructive notice by publication is not to be given until the writ has been returned. And since it is reasoned that in both cases the defendant is entitled to notice, the service of the summons being notice in the one

case, and the return and necessary publication being constructive notice in the other case, the result is reached that, without return made, the writ of attachment has not been executed, and unless the return is made on or before the return day, or some later day to which the court may extend the return, the writ becomes void. This, of course, would render the writ as completely null upon the expiration of one day after its return day as upon the expiration of three years.

In these views we do not concur. They are based, we think, upon an incorrect view of the proceeding by attachment against absconding and non-resident debtors, and of the part which the writ itself plays in our statutory scheme of practice. Our system, as is well known, had its prototype in the practice of the Mayor's and Sheriff's Courts of the city of London, under a custom of that city which was adopted from the Roman law. In *Locke For. At.* 1, it is said: "The object of the proceeding is to enable the creditor to attach the money, debts or goods of his debtor in the hands of a third person, and so to deprive the owner of all control over the subject of the attachment until he appears to answer the claim of his creditor or until the debt is satisfied."

The process was founded on the impossibility of giving notice to the defendant by the ordinary methods, and upon the presumption that if his goods were taken into the custody of the law, and his debtors were warned not to pay to him what they owed him, he would receive notice of the suit, and at the same time his property would stand as security for his appearance.

In our statutory practice the writ itself still performs the same function, although the legislature, in ease of the defendant, has added a requirement of publication. The Attachment act (*Gen. Stat.,* p. 98; *Pamph. L.* 1901, *p.* 158) in its provisions, with respect to the command of the writ, the mode of its execution, &c., proceeds in full recognition of this primary purpose. In the case now before us, the command of the writ is that the sheriff "attach the rights and credits, moneys and effects, goods and chattels, lands and

tenements of the defendant, *so that he be and appear* before our Supreme Court," &c.   And such is the approved form.

It was long ago held in this court that a failure of the clerk to advertise the attachment until the second term after its return was not ground for quashing the writ where the other proceedings were regular.   *Cory* v. *Lewis, 2 South.* 846.   So, also, the provision of the act requiring the clerk to make entry of the attachment at the time of its issuance has been held to be merely directory.   *Morrel* v. *Buckley, Spenc.* 667, 672.

The proceeding is *quasi in rem* to require the defendant's appearance (which he may enter by either giving bond or by permitting the lien of the attachment to continue, thus leaving his goods in the custody of the law and his lands likewise subject to the attachment), and if no appearance is entered, the proceeding results in a judgment that binds only the property attached.   *Thompson* v. *Eastburn,* 1 *Harr.* 100; *Tomlinson* v. *Stiles,* 4 *Dutcher* 201; *S. C.,* 5 *Id.* 426; *Miller* v. *Dungan,* 7 *Vroom* 21; *Blatchford* v. *Conover,* 13 *Stew. Eq.* 205, 210; *Devlan* v. *Wells,* 36 *Vroom* 213.

With respect to the vitality and efficacy of the writ itself, and the mode of its execution and return, there is no distinction between this writ and other writs, such as was taken by the court below.   The writ must be executed before its return day, unless the return be lawfully extended, but if it is executed in due season it loses none of its efficacy, nor is the property of the defendant to be discharged by reason of the failure of the sheriff to make a prompt return.   The decisions that are to be found in our books concerning the service and return of other writs all proceed upon the theory that it is a *service* before the return day that is needed to render the writ efficacious, and not upon the theory that it must be *returned* before the return day.   *Matthews* v. *Warne,* 6 *Halst.* 295; *Slate* v. *Kennedy,* 3 *Harr.* 22; *State, Van Cleef,* pros., v. *Commissioners of New Brunswick,* 8 *Vroom* 394; *McCracken* v. *Richardson,* 17 *Id.* 50.

The practice of taking a rule upon the sheriff requiring him to return a writ which has been executed in due season,

but not returned at the proper time, and the practice of ordering amendments to be made in the sheriff's return after the return day has passed, proceed alike upon the theory that so much of the command of a writ as requires the sheriff to be in court upon the return day with the writ, is only directory, and that the rights of parties cannot be affected by lack of diligence on the part of the officer of the court in this behalf. *Klœpping* ads. *Stellmacher,* 7 *Vroom* 176.

Upon the same principle rest the cases that disregard informalities and even substantial defects in the sheriff's return, provided it appears the writ was in fact executed in substantial conformity with the law. *Derrickson* v. *White,* 3 *Vroom* 137; *Norton* v. *Berlin Iron Bridge Co.,* 22 *Id.* 442; *Ennis* v. *Eden Mills Paper Co.,* 36 *Id.* 577, 585; *Thompson* v. *Eastburn,* 1 *Harr.* 100, 102; *Morrel* v. *Buckley, Spenc.* 667, 669.

We therefore hold that a plaintiff in attachment, if he be not in laches, has the right to require the sheriff to return the writ at any time. The order quashing the writ of attachment in the present case, having been based solely upon the ground that the writ became void by the failure of the sheriff to promptly return it, and that the court had no discretionary power to validate the return, must be reversed.

The order cannot be sustained upon the ground that laches on the part of the plaintiff requires the quashing of the writ, because the court below has not passed judgment upon this question, and there may be abundant reasons to excuse the delay. It is not strange that the case is devoid of explanation as to the delay of Mrs. Robinson's executor to proceed sooner, when we remember that the order now under review was made without notice to the executor, and only three days after it was made a party to the suit.

Let the order be reversed; costs to abide the event of the suit.