I. WHILDEN MOORE, DEFENDANT IN ERROR, v. WILLIAM
H. RICHARDSON ET AL., PLAINTIFFS IN ERROR.

Argued June 19, 1902—Decided January 16, 1903.

Where an action for trover and conversion will lie, the plaintiff may
waive such action and sue in *assumpsit*, in which case the measure
of damages is the value of the property at the time of conversion,
and an instruction that such value should be assessed at the cost
price specified in an agreement that antedated the conversion is
injurious error where there was other evidence of value more
favorable to the defendant.

On error to the Supreme Court.

Action on common counts, to which was annexed, as a bill
of particulars, "the cost price agreed upon between the par-
ties as follows for the following-named horses" (a list of
horses and prices). Plea, the general issue.

The declaration stated that the defendants had been brought
into court by attachment, and early in the trial it transpired
that the relation of the parties had been as follows: In the
year 1899 a written agreement was made between the parties,
in these words:

"BRIDGETON, N. J.

"This agreement made the above date between I. Whilden
Moore, party of the first part, of Bridgeton, N. J., and Rich-
ardson and Baldwin, parties of the second part, of Baltimore,
Maryland.

"Party of the first part agrees to furnish parties of the
second part cobs and driving horses under the following con-
ditions:

"That parties of the second part are to care, feed, sell and
assume the responsibility after horses have left the stable of
party of the first part. Party of the second part agrees to as-
sume responsibility in case of accident or death to the horses;
and it is also agreed by parties of the second part to pay
party of the first part upon the sale or exchange the amount

of actual cash as specified by parties, amount of actual cost as specified by parties of the first part, with one-half of profit above amount of actual cost to party of first part.

"And it is further understood, that the said horses are the property of the party of the first part until paid for as agreed upon as in this agreement. This contract is subject to annulment at option of party of first part.

"I. WHILDEN MOORE,        [L. S.]

"RICHARDSON & BALDWIN. [L. S.]

"Witness, S. D. RICHARDSON. [L. S.]"

Under this agreement the plaintiff shipped certain horses to the defendants, with cost prices specified, and upon January 12th, 1900, the defendants sent to the plaintiff a statement of sales to date, with a check for the sum shown by the account to be due. On January 26th, 1900, the plaintiff instituted proceedings in attachment against the defendants, under which, upon January 27th, a number of plaintiff's horses were attached in the possession of the defendants, who, on January 28th, gave bond to the sheriff, under the thirty-third section of the Attachment act, and shortly afterwards sold the horses in New York.

The plaintiff claimed at the trial that, prior to the institution of his attachment, there had been a conversion by the defendants of all of his horses that remained in their possession unsold, and that he had waived the action in tort that had thereby accrued to him, and had elected to sue in *assumpsit* to recover, as well the amount that remained due to him for horses sold under the express contract, as also for the value of the horses that had been converted by the defendants. Upon this theory the trial proceeded, in the course of which, among other exceptions allowed to the defendants, was one covering the trial court's instruction to the jury that, if the conversion was established, they should assess as damages the cost price of the plaintiff's property as specified by the parties in their express contract.

The defendants bring this writ of error.

For the plaintiffs in error, *Walter H. Bacon* and *F. B. Bracken.*

For the defendant in error, *J. Hampton Fithian* and *Edward Ambler Armstrong.*

The opinion of the court was delivered by

GARRISON, J. Where an action for trover and conversion will lie, the plaintiff may waive such action and sue in *assumpsit* for the value of the property converted. The measure of damages in such case is the value of the property at the time of its conversion. In the present case, therefore, laying aside the amount due for horses sold under the express contract between the parties, the measure of the plaintiff's damages was the value of his unsold horses at the time his action of trover accrued. Upon this question the parties were not bound by the prices fixed by the express contract. Whether the contract in this regard afforded any proof of actual cost need not now be considered, inasmuch as there was independent testimony upon this point that, in all respects, tallied with such list of prices. This independent proof of the cost prices of the converted horses, while competent testimony upon the question of their value at the time of conversion, was, in the nature of things, more or less remote. The prices brought by the sale of the same horses in open market at a period nearer in point of time to that of their conversion was also competent proof upon the question of value, of which, as will be pointed out, the case was not barren. In this state of the proofs the learned trial court charged the jury in these words: "If you do so find [that is, that the horses had been converted before the institution of the attachment], you may include in your verdict in this case the valuation of the plaintiff's horses so converted. The only evidence of value in such case is that fixed by these parties in the agreement—the cost price; so that, if you reach the conclusion I have stated, you may assess the value at such cost price as specified by the plaintiff at the time of the consignment of the horses to the defendants."

The abstract error of this instruction was that it confused

value with valuation, and substituted for testimony as to the value of the horses the convention of the parties touching their cost; its practical harm lay in the statement that such testimony as to cost price was the only evidence of value in the case, thereby, in effect, directing what the verdict must be if the jury found that the conversion had been proved. If this statement had been correct in point of fact, the abstract errancy of the charge would have been productive of no practical injury; but the statement was not correct; there was in the case other evidence of value. The evidence of value in the case other than the proof of cost price was the testimony that horses were sold in open market, after the attachment, at less than the cost prices fixed by the contract. That this testimony escaped the attention of the trial judge is not to be wondered at, in view of the fact that it eluded the vigilance of the counsel who introduced it. It came into the case in this wise: Counsel for the defendants, who had strenuously objected to any proof of what had happened after the alleged conversion of the horses by his clients, was examining one of the defendants as to the prices received from the sales of horses consigned by the plaintiff, and at the end of a series of such questions and answers, covering several transactions, this colloquy took place between the examining counsel and his witness:

. "*Q.* The next item is bay cobs, white feet, $400; did you receive these from Moore?

"*A.* Yes, sir.

"*Q.* What did you do with them?

"*A.* Sold them.

"*Q.* For how much—what did you sell them at?

"*A.* $225; there are three or four bay cob teams here, and I will have to be a little careful.

"*Q.* (By the Court.) Is this a bay cob?

"*A.* That is a bay cob team; yes, sir.

"*Q.* (By Mr. Bacon.) In your statement of the horses that have been sold so far, have you included any that were sold in New York?

"*A.* Oh, yes.

"*Q.* Well, I don't want that.

"*A.* Well, these horses were sold in New York, this team you just spoke about; you didn't ask that."

Whatever the witness may have meant by his last remark, and whatever may have been the desires of counsel, this testimony, which was responsive and competent, was not struck out, but remained for all legitimate purposes part of the evidence in the case. Upon the question of value it was upon the same plane as that respecting the cost of the horses and not so remote in point of time. It harmonizes, moreover, with the doctrine of many late American cases (upon which alone this phase of the present action can be sustained), viz., that a defendant who retains the property he has wrongfully converted may, for the purposes of an action on the case, be regarded as being himself the purchaser from the plaintiff. *Terry* v. *Munger,* 121 *N. Y.* 161; 24 *N. E. Rep.* 272 (overruling earlier New York cases); 7 *Encycl. Pl. & Pr.* 368; 21 *Id.* 1023; 4 *Cycl. Law & Pr.* 332.

To the objection that testimony that finds its way into a case contrary to the design of the counsel who produces it ought not to be permitted to redound to his benefit, the answer is that, if such be the rule, the present case would be stripped of all testimony upon the question of value, and the judgment would fall upon that account, for the testimony as to the cost price of the horses, as bearing upon the measure of damages, was equally foreign to the theory upon which the case was tried by the counsel who introduced it. The contention of the plaintiff's counsel at the trial was that the prices fixed by the express contract bound each of the parties to it as the measure of damages both as to horses sold under such contract and also as to those that had been converted by the defendants. A correct summary of his claim upon this point was thus stated by the trial court:

"He claims that they have the right to use this contract as showing, at least, the amount which the defendant must respond for, if he is held liable at all; that they can use that writing—the agreement—both parties, as fixing the value. That is the purport of what he said, in both branches of the

case, one for money received from the sale of the horses and the other from conversion of horses, if that is shown. That is the way I understand it."

Applying, therefore, the same rule to each party, either the testimony as to the cost price and the selling price constituted the evidence of value, or else there was no evidence of value in the case. The fact that the circumstances under which the horses were sold by the defendants were not brought out by their examining counsel, does not militate against the legality of the testimony, or lessen its persuasive quality, inasmuch as counsel for the plaintiff furnished proof, over the defendants' objection, that the horses were sold in New York by an auctioneer at the American Horse Exchange, of which public advertisement was given, and that the plaintiff was represented and made purchases at said sale. There cannot, as it seems to me, be any doubt as to the competence of this testimony. If the defendants had specifically offered to show that certain of the converted horses were sold at public auction at less than the cost prices, already in evidence, it would surely have been error to overrule such offer. Taking the case, therefore, as we find it, regardless of the motives that actuated the production of the proofs, the case established is that direct testimony of value was not offered by either party; that the plaintiff proved the cost prices of all of the converted horses and the defendants the selling prices of some of them, which were less than such cost prices, and that the jury was instructed to regard only the evidence as to the cost prices specified by the plaintiff.

Legal error is apparent upon the face of this summary, and the attempt to hold such instruction to be non-injurious fails, because there were conflicting proofs upon the precise point upon which the action of the jury was thus controlled. The judgment must therefore be reversed.

An observation that seems to be called for, in view of one of the arguments addressed to this court, is that in *Devlan* v. *Wells*, 36 *Vroom* 213, the discussion of the learned justice who delivered that opinion was upon the thirty-eighth section of the Attachment act, and that his reasoning is not applicable

to a claim that matured after the defendants' appearance under the thirty-third section, which is the one involved in the present case.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 13.