ALBERT C. COURTER v. DANIEL PIERSON.

Argued February 24, 1905—Decided June 12, 1905.

1. Where one unlawfully converts to his own use money, or property that by agreement of the parties is to be treated as the equivalent of money, placed in his hands for another purpose, the party injured may, for the purposes of an action, waive the tort and treat the transaction as amounting in effect to a loan of money by him to the tort-feasor.

2. Where plaintiff's bill of particulars showed that a part of his demand was based upon the claim of a third party assigned to the plaintiff, and the plaintiff relied upon a written assignment that was introduced in evidence without objection, the defendant neither in his pleadings nor at the trial challenging the fact of such assignment or the applicancy of the written assignment to the claim in suit—*Held*, that a verdict for the plaintiff would not be disturbed on the ground that the written assignment did not in terms refer to the claim in suit, it appearing that as between the assignor and the plaintiff it was intended to transfer that claim.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, GARRETSON and PITNEY.

For the plaintiff, *Robert H. McCarter,* attorney-general.

For the defendant, *James E. Howell* and *Chandler W. Riker.*

The opinion of the court was delivered by

PITNEY, J.   This is an action upon contract brought for the recovery of two claims, viz.:   *First,* plaintiff claimed, as assignee of one Morey, to be entitled to recover from the defendant, Pierson, the sum of $5,000 and interest for moneys intended to be loaned by Morey to an Alabama corporation known as the Southern Cement Company, and alleged to have been appropriated by Pierson to his own use, he being the intermediary through whom the loan was to reach the com-

pany. *Secondly,* Courter claimed to be entitled to recover in his own right against Pierson for moneys aggregating $8,000, paid by him to Pierson for an interest in the Southern Cement Company enterprise, less a credit allowed for eighty shares of the stock of the company, delivered by Pierson to Courter, at a valuation of $50 per share, amounting to $4,000, and leaving the balance of this claim $4,000, besides interest. Upon trial before the Chief Justice and a jury a verdict of $6,530 was rendered in favor of the plaintiff. By the state of the case it is made to appear that in making up the verdict the jury allowed the whole of the Morey claim and interest, amounting to $6,030, and allowed to the plaintiff only $500 of his second claim.

Defendant asks for a new trial on the ground that the finding of the jury is against the law and the charge of the court, and against the clear weight of the evidence, and also because the verdict is excessive in amount.

It appears from the evidence that the Southern Cement Company is an Alabama corporation, with works located at Birmingham, in that state. Its capital stock is $50,000, and at the time of the transactions out of which the action arises it owed debts in excess of $20,000. One-half of the capital stock was held by parties residing in Birmingham, and they at the same time held claims against the company for about $8,000. Defendant's attention was called to the company as offering an attractive opportunity for investment, and he undertook to finance it. The plan proposed was that he should lend to the company $10,000, Morey should lend $5,000, and another stockholder, one Curtin, should lend $5,000, and that at the same time Pierson should buy one-half the entire capital stock from the Birmingham stockholders for $12,500. This plan in substance was adopted, and Pierson was placed in general control of the finances of the company. It appears that Morey, instead of advancing $5,000 in money, turned over to Pierson some stock held by him in a southern iron company, which one of the Birmingham stockholders of the cement company was willing to accept as $5,000 in cash. Whether as between Pierson and the Birmingham parties the

iron company stock was to be taken as payment to the extent of $5,000 for the cement company stock they were to transfer to Pierson, or whether it was to liquidate $5,000 of the debts owing by the cement company to them, is not clear, and for present purposes makes little difference. The understanding between Morcy and Pierson was that the iron company stock was to be treated as Morey's contribution of $5,000 to take up the outstanding indebtedness of the cement company, and that Morey should become a creditor of the company to that amount. Subsequently Morey transferred to the plaintiff, by assignment in writing, "all of my interest in a loan made by me to the Southern Cement Company, amounting to $5,000."

Plaintiff's action against the defendant, so far as this claim is concerned, is based upon the assertion that Pierson did not turn over to the cement company $5,000 for Morey's account as the equivalent of the iron company stock, and that although Pierson was in control of the fiscal operations of the cement company, Morey had received no evidence of indebtedness from that company, nor any credit upon its books or otherwise for the loan; and that, on the other hand, Pierson himself appeared as a creditor of the company for all moneys paid by him to its treasury, including the $5,000 paid on Morey's account, if this particular sum ever was paid by Pierson into the company's treasury. In effect the claim is that Morey's $5,000 was converted by Pierson to his own use. Upon examination we are unable to say that the finding of the jury to this effect was contrary to the clear weight of the evidence.

It is earnestly insisted in the argument here that any claim Morey had against Pierson for conversion of the iron company stock, or of the purchase-price thereof, intended to be loaned by Morey to the cement company, is not covered by the assignment made by Morey to the plaintiff. But we are unable to find that any such question was raised, either by the pleadings or by the proceedings at the trial.

The declaration is upon the common money counts, with a bill of particulars annexed, one of the items of which is: "To amount loaned by Morey to defendant, and with defendant's consent, claim assigned by Morey to plaintiff, $5,000." Al-

though the Morey claim, as against Pierson, sounded in tort, it was permissible for the plaintiff, by waiving the tort, to treat the transaction as amounting in effect to a loan by Morey to Pierson. *Moore* v. *Richardson, 39 Vroom* 305; *Hirsch* v. *Leatherbee Lumber Co., 40 Id.* 509, 519.

The plea was the general issue, under which the following defences were specified: *First,* that defendant made no such contract with the plaintiff as is set out in the declaration; *second,* that the defendant owes the plaintiff nothing; *third,* that the plaintiff never loaned or advanced any moneys to the defendant. These amount to a denial of the making of the several contracts sued upon, but do not raise any question of. the plaintiff's title to recover the Morey claim. There are other specifications, but none that has any reference to this claim.

Upon the trial, after evidence given concerning the transactions between Morey and Pierson, the written assignment already referred to was offered in evidence and admitted without objection. Mr. Morey likewise testified that he passed this claim over to Mr. Courter. It was reasonably clear that it was his intention to pass over his title to the money in question, whether that money was to be sought from the cement company or from Pierson. At the close of the plaintiff's case there was a motion to nonsuit, but with respect to the Morey claim it was based solely on the ground that the plaintiff could not recover upon that item in a court of law, but must seek his remedy in another forum—manifestly an untenable ground. At the conclusion of the defendant's evidence the court was requested to charge that the defendant was entitled to a verdict on the whole case, but no ground was assigned for this request, and so, of course, there was no error in its refusal. The only request preferred by defendant for specific instructions to the jury with respect to the Morey transaction was that, "If it is any claim at all, it is a claim against the company only, and not against Mr. Pierson." This request could not properly be granted in view of the evidence. The Chief Justice charged the jury in effect, "That if the defendant, Pierson, converted Morey's iron stock to his own use he

was responsible to Mr. Morey; that Morey, if he had retained the right, could at any time have called on Pierson to respond; and what Mr. Morey could do, Mr. Courter, as his assignee, can do." To these instructions no exception was taken. In short, the, trial proceeded, without objection by defendant's counsel, on the theory that the assignment had the effect of transferring to Courter Morey's right to recover from Pierson the $5,000 in question. It would be manifestly unfair to the plaintiff to order a new trial on the ground that the assignment did not cover Morey's claim against the defendant individually, even if we were of the opinion that by its terms the assignment could not be given such an effect—à point we have not stopped to consider.

With respect to the plaintiff's second claim, it was undisputed that sums aggregating $8,000 passed from Courter to Pierson. Courter's claim was that it was paid for the acquisition of an equal interest with Pierson in the cement company enterprise, and that Pierson had refused to transfer to him such an interest. Pierson's claim was that it was intended to be loaned by Courter to the cement company, and that it had been in fact transmitted by him to the company for Courter's account. From Pierson's own evidence, however, it appeared that, at least as to $500 of Courter's money, there was no corresponding remittance by Pierson to the company, and it was doubtless on that ground that this sum was included in the verdict. This result was, on the whole, favorable to the defendant, and since the recovery of that amount was fully justified by the evidence, there is no reason for disturbing the verdict at defendant's instance.

The rule to show cause will be discharged, with costs.