# Gulf Coal & Coke Co. *v.* Musgrove.

### Assumpsit.

(Decided November 14, 1915.　70 South. 179.)

1. **Corporations; Dividend; Actions for.**—Where plaintiff had sold land to the predecessor in title of the defendant corporation and defendant retained the declared dividends as security for possible breaches of the covenant of title, and then converted the money, plaintiff's remedy is a suit for dividends declared, and not by an action for failure to declare a dividend, since there could be no unlawful discrimination against the stock in the corporation held by plaintiff.

2. **Trusts; What Are.**—Where a stockholder sold land to a corporation which was a predecessor in title of the defendant corporation, and, expecting a breach of covenant of title, the defendant corporation, with the stockholder's consent, retained dividends due, depositing them at interest, a trust was

[Gulf Coal & Coke Co. v. Musgrove.]

created by the pledge and upon a conversion of the money assumpsit would lie, the recovery to include the amount of dividends withheld.

3. **Limitations of Action; Dividends.**—Where a dividend declared on corporate stocks was held by the corporation to indemnify it for loss on the stockholder's warranty of title to land, the claim for the dividend was not an open account which could be barred by the three year statute of limitation, notwithstanding the corporation asserted a set off.

4. **Covenants; Right of Corporation; Transfer of Assets.**—Where plaintiff sold land to a corporation with warranty of title in fee simple and thereafter the defendant corporation was formed, the shareholders in the original corporation surrendering their old shares and receiving new shares issued by defendant corporation, the defendant could not question the good faith of the transaction so as to assert against the new shares issued plaintiff, a lien on account of breaches of covenant of warranty which occurred, if at all, at the time they were made; it appearing that no right of action for covenants breached had been transferred to defendant corporation.

5. **Same; Breach; Conveyance.**—A transfer of land after breach of the grantor's covenant of title does not carry with it the damages, since they do not run with the land or inure to the benefit of subsequent grantees.

6. **Same; Construction.**—In substance and effect a covenant of general warranty of title is a covenant for possession and quiet enjoyment.

7. **Same; General Covenants.**—A general covenant of title does not include a covenant of quantity where the lands are sold by metes and bounds; a statement as to their acreage being a description merely.

8. **Same.**—Where the corporation set up that the shareholders, who executed to their predecessor deeds to certain lands, never had any title to or posssssion of any part of the land, but executed a deed when the lands were adversely owned or held by other parties, they showed a breach of the covenant at the time it was made, and thus showed that being only the grantee of the original corporation to which the lands were transferred, they were not entitled to the damages for the breach, and hence, could not set them off against a claim of the shareholder for dividends due.

9. **Same; Breach; Right of Action.**—A covenant of possession and quiet enjoyment is not breached unless there is an actual eviction; hence, its breach cannot be established by a mere proof of an outstanding superior title.

10. **Corporations; Dividends; Interest.**—Where, in order to indemnify itself, a corporation retained dividends due a shareholder, some with the consent of the shareholder, and others over the shareholder's protest, the corporation is liable for interest from the date of the conversion of the dividends retained by consent, and for interest on the others from the date of the declaration of the dividend.

APPEAL from Mobile Law and Equity Court.

Heard before Hon. SAFFOLD BERNEY.

Assumpsit by L. B. Musgrove as surviving partner of the firm of L. B. & J. C. Musgrove, against the Gulf Coal & Coke Company, to recover dividends declared and withheld. Judgment for plaintiff, and defendant appeals. Affirmed.

[Gulf Coal & Coke Co. v. Musgrove.]

R. W. Stoutz, and Brooks & Crawford, for appellant. Stevens, McCorvey & McLeod, for appellee.

SAYRE, J.—This appeal was submitted under rule 46, 178 Ala. xix, 65 South. vii, and has been considered in accordance with that rule.

Appellee Musgrove, as surviving partner of the late firm of L. B. & J. C. Musgrove, stockholders in the defendant corporation, sued the Gulf Coal & Coke Company to recover certain dividends that had been declared on their stock. Plaintiff had judgment, and the defendant appeals.

(1) Appellant's first proposition is that appellee mistook the form of his remedy. The suit is for dividends declared, the same cause of action being also stated in the common counts for money received and held by appellant to the use of the appellee. Appellant's contention is that the remedy, if any, was by an action for a failure to declare, and not for a failure to pay, the dividends here in suit. Dividends were duly declared on July 22, 1907, and July 10, 1908, on all outstanding stock, payable in each case immediately. But appellee's firm had previously conveyed to appellant's predecessor in title large tracts of land with customary covenants of warranty, and the agreed statement of facts shows that on the occasion first above mentioned appellant by resolution of its board of directors retained the dividend on the Musgrove stock, amounting to the sum of $8,000, "to secure the payment of any liability on the part of plaintiff to defendant based upon any breaches of warranty, and plaintiff consented thereto." This sum of $8,000 was thereupon placed by appellant in bank as a separate interest-bearing deposit, where it remained until July 10, 1908, when it was withdrawn by appellant and used for its own purposes. The dividend of July 10, 1908, amounting to $12,000, was also withheld from appellee. On that occasion, however, appellee protested against this action of the board, and demanded his dividend. Notwithstanding appellant's course with respect to these dividends, they were dividends declared, for there could be no lawful discrimination against the Musgrove stock, and dividends among stockholders of the same class must always be pro rata, equal, and without preference (2 Cook, Corp. § 540), nor is there any evidence that the corporation attempted any discrimination in the mere matter of

declaring the dividends. It is then too clear for further argu-. ment that the facts in evidence would not support an action in any form as for a failure to declare the dividends in suit, and that so far as the form of action is concerned, appellee has pursued the only remedy open to him, the only debatable question being whether appellant had lawful warrant for its further retention of the dividends declared.

(2) In the next place appellant relied upon the statutes of limitations of three and six years against the items of $12,000 and $8,000, respectively.

Considering first the item of $8,000, it is to be noted that this section was commenced February 28, 1914, within six years of the date on which appellant converted the dividend of that amount to its own use. By the declaration of the dividend the corporation became a debtor to its stockholders. Thereafter the fund was held as security, not, however, as security for any liability on the part of appellee for breaches of covenant then ascertained or agreed upon, for appellee has at all times denied that there was or ever could be any·such breach, but to cover, as we must presume, any such liability of possible future development as the directors deemed it prudent to guard against It is not irrelevant nor immaterial in this connection further to note that appellant's board of directors, in withholding the two dividends, do not appear to have had in mind security against breaches of covenant affecting the particular parcels of land in respect of which appellant sought by way of set-off to show damages suffered, but, generally, their purpose was to take security against possible breaches as to any of the numerous and extensive tracts of land it had purchased from the Musgroves. Indeed, the evidence shows affirmatively that this was the idea and purpose, and on no other hypothesis can appellant's action be explained consistently with reason and fair dealing, for while it retained first and last $20,000 of dividends declared upon the Musgrove stock, the measure of damages to accrue from the specific breaches alleged in this suit was by the covenant itself contingently fixed at a sum slightly in excess of $5,000. This arrangement as to the $8,000 dividend was in the nature of a pledge of the fund, and thereby a trust was created.—*Keeble v. Jones*, 187 Ala. 207, 65 South. 384; *Glennon v. Harris*, 149 Ala. 236, 42 South. 1003, 9 L. R. A. (N. S.) 214, 13 Ann. Cas. 1163.

And upon a breach of that trust by a wrongful conversion of the fund or by the trustee's unauthorized use of it, appellant became liable in an action of assumpsit, and appellee's damages were properly measured by the amount of the money so used or converted with interest thereon.—*Bank of Mobile v. Huggins,* 3 Ala. 206; *Bradfield v. Patterson,* 106 Ala. 397, 17 South. 536.

(3) As to the item of $12,000: Upon declaration of the dividend it became immediately the individual property of appellee, and he was entitled to maintain his action of debt for the amount due him according to the resolution declaring the dividend.—4 Cook, Corp. §§ 540-542. The amount being fixed by the resolution in connection with appellee's undisputed ownership of a definite number of shares of stock, the terms of the contract—the resolution amounted to that—became fixed and certain between the parties, and was in no sense an open account within the meaning of the statute of three years.—*Sheppard v. Wilkins,* 1 Ala. 62. Upon this status of the dividend as a debt the fact that appellant corporation claimed a set-off, to the satisfaction of which the dividend due the stockholder might be applied in liquidation, had no effect. It was still a debt due.—*Hairston v. Sumner,* 106 Ala. 381, 17 South. 709. The foregoing conclusions might no doubt be sustained on another ground, but we leave them to rest on the considerations stated.

(4, 5) We come then to appellant's counterclaim, which, with the exception of one item confessed by appellee, was denied by the trial court. In 1884 a corporation known as the Gulf Coal & Coke Company was formed for the purpose of dealing in lands and mineral rights. To that corporation the Musgroves in 1884, 1885, and 1887 executed conveyances of large consolidated tracts of land which they had acquired through many different transactions with persons who had previously owned, or claimed to own, different parts of them, including those parcels that have come to figure in this case. These conveyances recited cash considerations based upon prices by the acre. In fact they were in large part made in payment of stock subscriptions. In December, 1887, the Gulf Coal & Coke Company and the Musgroves entered into an "agreement and deed of mutual covenant" by which, after a recital in substance that the several deeds executed by the Musgroves did not fully state the value and consideration paid for them, that they did not correctly state the ex-

tent and nature of the several warranties therein contained, that some of the titles had not been approved by the company's attorneys, on account of which certain certificates of stock had been withheld by the company, to which the Musgroves would be entitled upon such approval, the Musgroves, on various considerations stated, covenanted with the company, its successors and assigns, that "they were at the time of the several conveyances lawfully seized in fee simple of the lands and mineral rights in lands by them conveyed; that said premises were free from all incumbrances, and that they (had) a good right to sell and convey the same and they will (would) warrant and defend the same to the said company, its successors and assigns, against the lawful claims of all persons." It is on account of an alleged breach of this covenant as to some relatively small parcels of the land previously conveyed that appellant claimed a set-off. On the same day the stockholders of the Gulf Coal & Coke Company, converting their stock holdings in the old company into something more than one-half of the stock of the new in the proportion of one share of the former for two and one-half shares of the latter, and, as part of the same scheme no doubt, the old company conveyed to the new all its lands and mineral rights, mines, and appurtenant rights, owned by it in Walker county, including the several parcels that have come into question.

To meet difficulties that arise in connection with one aspect of the argument on its behalf, to avoid consequences flowing from the fact that it was not appellee's immediate grantee, appellant cites section 673 of Cook on Corporations as going to show that it is one and the same corporation as the Gulf Coal & Coke Company, that the continuity of corporate existence has not been broken, and that it was entitled on the trial to the benefit of every right that the Coal & Coke Company might have asserted had it occupied appellant's place in the suit. In other words, to state the contention with a view to its only possible practical operation, it is that, even if the breach alleged were coeval with the covenant, and so appellant's cross-action on the covenants was barred by the statute of limitations, still its statutory lien on appellee's stock and dividends, by which the liability of the Musgroves was secured, remained unimpaired by the lapse of time, and should have been made effectual as a set-off against appellee's suit to recover dividends. The cited

[Gulf Coal & Coke Co. v. Musgrove.]

text states the principle that where one corporation takes a conveyance of all the property of another, paying therefor in the stock of the former issued to the stockholders of the latter, creditors of the former may hold the latter corporation liable to the extent of the value of the property so conveyed. The theory, of course, is that such a transaction is a fraud upon creditors; and here no such question is presented. On the face of the record —and we have stated all that appears—these two corporations were different entities, and it seems that appellant would be estopped to deny the validity or bona fides of the transactions in which it participated or that they had effect, according to their patent purpose, in the creation of a new corporation and the conveyance to it of the lands that belonged to the old. There was no transfer of the right of action as for covenants breached; and—assuming now that the covenant upon which appellant relied was broken when made, if at all, as will appear from the facts reserved for future consideration—the damages which had already accrued did not run with the land, nor did they inure to subsequent grantees of the title.—*Pinckard v. Mortgage Co.*, 143 Ala. 572, 39 South. 350; *Prestwood v. McGowin*, 128 Ala. 276, 29 South. 386, 86 Am. St. Rep. 136.

(6) Appellant's cross-action had no formal statement, the cause having been tried by the court without a jury on the complaint, and an agreement that the substantial legal rights of the parties might be shown in evidence in all respects as if properly presented by pleadings. We do not understand that appellant claimed as for a breach of the covenants of seisin, the right to convey, or against incumbrances, for those covenants, confessedly, if broken at all, were broken eo instanti their execution and converted thereupon into mere choses in action inuring to the Gulf Coal & Coke Company. Appellant's claim was for a breach of the covenant of general warranty which was in substance and effect a covenant for possession and quiet enjoyment.—*Musgrove v. Cordova Co.*, 191 Ala. 419, 67 South. 582.

(7) Aside from other reasons to be hereafter shown, there could be no recovery in the cross-action on the general warranty as to those parcels of land designated in the agreed statement of facts by the numbers 136, 211, and 217, for the reason that the only claim made in respect to them was that they were short of the acreage recited in the deed. These parcels were conveyed

by metes and bounds, their acreage being stated in the deeds. But there was no express covenant as to quantity; nor was such covenant to be implied, for the rule is well settled that where land is conveyed by metes and bounds and with an enumeration of the acres included, the enumeration is held to be a matter of description merely.—*Hess v. Cheney,* 83 Ala. 251, 3 South. 791; Rawle Cov. (5th Ed.) § 297.

The controversy as to parcels 32, 40, 109, 130, 155, and 216 is to be determined on different considerations. Appellee testified that he had never been paid for these parcels, that while his deeds included them, his conveyances were made upon the understanding that payments were to be made as his titles were approved by the grantee's attorney, and he now refers to several circumstances which tend to corroborate his contention that his titles to these parcels were never approved, and that he was never paid for them. But an inference to the contrary may be drawn from the conflicting testimony, and for this reason, as well as because the trial court in ruling upon the motion for a new trial indicated that the case was decided adversely to appellant without reaching the disputed question as to payment, we have preferred to pass to other grounds of judgment.

(8) One quality of the covenant upon which appellant relied is that it runs with the land, inures to the benefit of the ultimate grantee in whose time it is broken, and to constitute a breach there must be an actual or constructive eviction.—*Musgrove v. Cordova Co., supra,* and cases there cited. But, as we have already stated, damages for a breach do not pass to a subsequent grantee of the title. And in our judgment an eviction was shown as of the date of the covenant. In the agreed statement of facts it was stipulated as follows: "Neither the said L. B. Musgrove nor J. C. Musgrove ever had any title to, or possession of, all or any part of said parcels 32, 40, 109, 155, 217, and 130. On the contrary, when the said Musgroves executed their aforesaid several deeds, each of said parcels was adversely owned and held by other parties under valid claims of title."

Appellant now contends that this stipulation meant only that there was at the time to which it refers outstanding valid claims of title, and intended nothing at all in regard to actual possession of these several parcels. It cannot be assumed that the agreement was improvidently made on either hand, and for us its

meaning must be determined by the language used. We think an analysis will show that it was intended to express an agreement that these parcels were held by an actual adverse possession at the time of the several conveyances by the Musgroves. That the parties, when agreeing in the first sentence of the stipulation that the Musgroves had never had title or possession, had in mind the true title and actual possession, and considered these as not the same, but different things, seems quite plain. The evident purpose, indicated alike by the language employed and the issues raised by the counterclaim, with a view to which the agreement must be considered to have been made, was to establish the fact that the Musgroves had neither the true title nor actual possession. Then follows the antithetical sentence in which the words "owned" and "held" express concepts so aptly correlated respectively to "title" and "possession" in the preceding sentence as to leave no room for misunderstanding the purpose of their use, affirming that the title and possession with which the stipulation was intended to deal, true title and actual possession, rested in and with other parties. Conducive to this interpretation of the stipulation, natural and easy enough by itself, is the fact that in its second member or sentence both the title and holding of the other parties is described as adverse. The agreement was drawn by lawyers who had in view those principles of the law which were involved in the case at issue, and it must be presumed that in the use of terms they were affected by a knowledge of the common language of the books in which the phrases "adverse possession" and "adverse holding" are used as substantial equivalents. Counsel for appellee have collated from our decisions many examples of this interchangeable use of these terms. It is not a matter of much consideration, in view of the circumstances under which and the purpose for which the agreed statement of facts was prepared, but we doubt not that such is also the meaning attached to the terms "adversely held" when used by the laity with reference to lands. Nor does it militate against this construction of the stipulation that the covenant in question related to mineral interests only. It does not appear that a severance between the surface and the minerals in these parcels has ever been affected, or, if from the fact that appellant's counterclaim and the agreement are based upon and deal with mineral rights only it is to be inferred that there

has been a severance at some point in the history of the titles involved, that point has not been located, and presumptively, since both title and possession were outstanding in other parties, possession of the surface was possession of the underlying strata; and, in any event, separated mineral interests in land are in law as capable of an adverse holding as any other. There was then an eviction and a breach of the covenant at the time of appellee's conveyance to appellant's predecessor in title, for "if there is at the time of the conveyance paramount outstanding title and possession under it, and in consequence the grantee does not enter into possession, this is a constructive eviction, though he has never been ousted and there has been and could be in the nature of things, no technical eviction."—*Oliver v. Bush,* 125 Ala. 536, 27 South. 924.

(9) But appellant, notwithstanding it relies of necessity upon the above-quoted stipulation for proof of the fact that at the time of the Musgrove conveyances there was an outstanding paramount title to the mineral interests, which alone figure in the controversy raised to the counterclaim, construing the stipulation in respect of possession as affecting the surface only— this on the ground of the practical difficulties in the way of an actual possession of mineral interests in wild lands where there has been a severance of title between the surface and the subjacent minerals—contends for a constructive eviction, and upon considering the brief we conclude that appellant, conceiving the question of a breach of the covenant for quiet enjoyment in these peculiar circumstances to involve nothing more than a dealing with a certain concept in the mind of the grantee would refer the constructive eviction upon which it relies to the time when its officers and agents were first brought definitely to know and recognize the fact that the Coal & Coke Company had acquired no title by its purchase from the Musgroves, or, more specifically, to the time when, in 1908, appellant, negotiating a sale of its lands to the Empire Land Company and finding then that it had no title, "eliminated" these parcels from consideration or conveyance in that transaction. At any rate, it was not made to appear, apart from the stipulation, when or how otherwise appellant had even suffered an eviction. We have stated our construction of the stipulation; but to concede error as to that would avail appellant nothing, for the authorities hold with practical

unanimity that the mere existence of an outstanding superior title does not amount to a breach of the covenant for quiet possession, that to constitute an eviction there must be a change of possession, that the possession of the convenantee, whether actual or constructive, must be disturbed by the active hostile assertion of a better title—this for the reason that, to hold otherwise would be "to do violence to the immemorial principles underlying and governing the covenant of warranty of title, and practically to abolish the distinction between that covenant and those of seisin and of right to convey."—*Green v. Irving,* 54 Miss. 450, 28 Am. Rep. 360. It is held that the purchase in good faith of an outstanding superior title—as was the case in *Musgrove v. Cordova Company, supra,* upon which appellant seems to rely to some extent—is the legal equivalent of an eviction; but there is nothing of that sort in the case here. This subject is discussed at some length in Rowle on Covenants for Title, § 319 et seq., which was before us when the opinion of *Musgrove v. Cordova Company* was written, and our consideration of what is there said has led us to conclude that there has been no eviction in this case since the date to which the agreed statement of facts relates. So that, as for the facts brought into view as occurring since that time, appellant is no more excluded from possession now than it has always been. On the facts stated in the agreement—the effect of which is unchanged by some apparently casual expressions falling from the witnesses examined or by some matters which found their way into the agreement, as, for example, the statement that appellee caused a claim to be filed against the estate of his deceased brother for his share of liability for problematical damages on account of unascertained breaches of the covenants in controversy—on these facts, though its theory of the meaning of the stipulation be conceded, appellant failed to sustain its alleged set-off. If the mineral interests in question have never been the subject of an actual adverse holding, then no active assertion of an outstanding paramount title has been made to appear, there has been no eviction, nor any breach of covenant as alleged. If, on the other hand, the mineral strata have been adversely held, that holding cannot be referred otherwise, than to the time when the Musgroves executed deeds, to appellant's grantor, in which case appellee's covenant was breached when made, and the damages arising therefrom did not accrue to appellant.

[Tyson & Arrington v. Thompson.]

(10) The trial court correctly counted interest upon the dividends due appellee, less the admitted item of set-off, from July 10, 1908. The judgment was free of error, and must be affirmed. Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.