BOWEN *v.* DETROIT UNITED RAILWAY.

1. DAMAGES—ASSUMPSIT—CONVERSION—FORM OF ACTION— QUASI CONTRACT—MEASURE OF DAMAGES.

In an action in assumpsit for the conversion of two car loads of coal, where defendant conceded that, under the pleadings, the case should be tried on the theory that the conversion had occurred under a *quasi* contract, the proper measure of damages was the value of the coal in the open market at the time and place of conversion.

2. SAME.

Defendant's contention that, under the pleadings, the measure of damages should be the price it would have to pay for coal of like quality under its contract, which was less than the market price at the time, there being a great scarcity, on the theory that it should pay the amount it

was enriched rather than the amount that plaintiff was impoverished, cannot be sustained, since defendant, under its own theory, was enriched to the extent of the market price.

Error to Wayne; Webster (Arthur), J.   Submitted October 7, 1920.   (Docket No. 37.)   Decided December 21, 1920.   Rehearing denied March 31, 1921.

Assumpsit in justice's court by William T. Bowen against the Detroit United Railway for the conversion of certain coal.   There was judgment for plaintiff, and defendant appealed to the circuit court.   Judgment for plaintiff on a directed verdict.   Defendant brings error.   Affirmed.

*Corliss, Leete & Moody* and *Thomas W. Parker,* for appellant.

*Lyle G. Younglove* and *Lloyd T. Chockley,* for appellee.

On February 19, 1917, there arrived in Detroit over the Michigan Central railroad two car loads of coal consigned to the plaintiff.   Through an error of the railroad one car (No. 30020), containing 44 gross or long tons of 2,240 pounds, was switched upon the Harper avenue siding at the defendant Detroit United Railway, and on that day the railroad company caused to be delivered to defendant a car demurrage report indicating the placing of said car for unloading.   The car contained coal of the same character as that purchased by the defendant for the purpose of heating its cars and was by the defendant promptly unloaded and ultimately used before the discovery of the error by plaintiff, which was on June 18th—some 4 months later. At that time plaintiff brought the matter to the attention of defendant's purchasing agent who then offered

212—Mich.—28.

a car load of coal to replace that inadvertently converted by defendant. This adjustment was refused by plaintiff, as was likewise an adjustment based upon the contract price of $6.10 per long ton, that being the price at which defendant was purchasing its requirements for that season.

It appears that there was a great shortage in the city of Detroit of coal of this size and quality and that, in order to meet the demands of his customers, plaintiff was obliged to and did go into the open market and purchase from various sources a quantity sufficient to replace the coal converted by defendant. For this he paid $9.25 per short ton, and demanded that sum from defendant in settlement. This having been declined, suit was brought in justice's court of the city of Detroit, in assumpsit.

No question of pleading was raised in justice's court by defendant, the plea being simply the general issue. A judgment followed for plaintiff, which was appealed to the circuit court. At the circuit, the foregoing facts were made to appear without dispute. An extended argument followed between counsel, touching the form of action and the measure of damages, in the course of which the following occurred:

"*The Court:* As I understand you, Mr. Parker, you are willing to concede that the plaintiff is properly in court in an action of assumpsit, but, being here in an action of assumpsit, he must be bound by the rules permitting recovery in assumpsit.

"*Mr. Parker* (counsel for defendant): Yes. Upon *quasi* contract, involving waiver of tort.

"*Mr. Chockley* (counsel for plaintiff): That is all right. It is *quasi* contract, and it involves the waiver of tort. If he is willing to concede I am properly in court on that, that is all right."

The court thereupon further charged the jury as follows:

"Now, upon that concession, it seems to me this case

is resolved into a question of what is the proper measure of damages in an action of assumpsit, under the concession made by counsel on the record.

"It is the claim of defendant's counsel that the proper measure of recovery is the amount which the defendant was enriched by the conversion of this coal and it is his claim that the defendant was enriched by the conversion of this coal simply the amount that defendant was paying for that class of coal at that time. It appears in evidence that the Detroit United Railway had a contract for hard coal of this quality under which they were paying $6.10 a gross ton. It is the claim of defendant's counsel that the Detroit United Railway was enriched, as the term is used, to that extent, and only to that extent; and that, because this is an action of assumpsit, the plaintiff can only recover to the extent that the defendant was enriched.

"In my opinion, that is not the proper measure of damages. Conceding that the plaintiff has a right to sue here in this court for this conversion in an action of assumpsit, under the concession made by defendant's counsel and accepted by plaintiff's counsel, it seems to me that the proper measure of damages is the reasonable market value of the coal at the time it was taken over or converted by the defendant, the Detroit United Railway.

"I am of the opinion that that is the proper measure of damages, because it seems to me that the defendant Detroit United Railway was enriched to that extent when it took over this car load of coal. That car load of coal at that time, standing outside of the D. U. R. yards, was worth in the market in Detroit a certain price. When they got that car load of coal they got a car load over and beyond any contracts that they had with any other persons, and they were enriched to the extent of that value of that car load of coal at that time in the market in Detroit. It seems to me this is obvious, because if, instead of loading the coal and using it, the Detroit United Railway had converted the coal and immediately sold it in the market, they could have obtained for the coal the reasonable market price at that time.

"Now, then, the testimony here upon the record shows that the reasonable market value of coal at that

time, which was a time when it was almost impossible to get any kind of coal, and especially hard coal; that a fair and reasonable market value of coal at that time in the market in Detroit was $9.25 per net ton, as distinguished from a gross ton.   The defendant asks the court to direct a verdict in favor of the plaintiff for the amount which it claims is the proper measure of recovery.   I cannot agree with the defendant's contention, and, as the defendant does not care to go to the jury on the question of reasonable market value of the coal on the date in question, February 19, 1917, I direct you to return a verdict for the plaintiff for the car load of coal at $9.25 per net ton, as distinguished from gross ton, with interest from the date it was converted, which was February 19, 1917.   As this interest, added to the amount of the net tonnage in this car load of coal, would make it exceed $500—the extent of the jurisdiction of the justice's court, and this suit having been brought in justice's court, the plaintiff cannot recover in this action more than $500.   The plaintiff has expressly remitted all over $500, and, therefore, I direct you to return a verdict in favor of the plaintiff for $500.   You will rise, and the clerk will take your verdict."

A judgment followed in the sum of $500.

BROOKE, J. (*after stating the facts*).   It is the contention of the defendant in this court that a judgment should have been directed against it only for the amount of the contract price it was then paying for coal of a similar character ($6.10 per long ton). As sustaining this position, counsel cite Woodward's "Law of Quasi Contracts," at pages 4 and 5, where it is said,

"The legal obligation arising, without reference to the assent of the obligor, from the receipt of a benefit the retention of which is unjust, and requiring the obligor to make restitution.   *   *   *

"They require that the obligee shall be compensated, not for any loss or damage suffered by him, but for the benefit which he has conferred upon the obligor; * * *

that while in many cases of the receipt of property there is doubtless a moral obligation to make restitution in specie, and while equity frequently compels restitution in specie, the only obligation recognized and enforced at law is the obligation to make restitution in value, *i. e.*, to pay the equivalent or the reasonable worth of the benefit received; * * * hereafter called the obligation to make restitution."

And in support of the text the case of *Limited Investment Ass'n* v. *Glendale Investment Ass'n,* 99 Wis. 54 (74 N. W. 633). The gist of defendant's position may be stated to be that, under the circumstances, the pleadings, and the law applicable thereto, defendant should be liable only for the amount that it was enriched through the conversion of the car load of coal and not the amount which plaintiff was impoverished thereby.

We are of the opinion that, under the concession above quoted, the rule of damages laid down by the learned circuit judge was applicable. That concession permitted a recovery by plaintiff on the theory that the conversion had occurred under a *quasi* contract. As we understand it, the proper measure of damages for conversion under such circumstances is the value of the property converted in the open market at the time and place of conversion. It is undisputed upon this record that plaintiff, at the time and place of conversion, paid for coal of a like quantity in the open market $9.25 per short ton. It may therefore be said, even under defendant's theory, that defendant by the accidental conversion was enriched to that extent.

Upon the question of pleading insisted upon so strongly by defendant, we are of the opinion that the recent decision of *Denton* v. *Booth,* 202 Mich. 215 (2 A. L. R. 114), is controlling.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.