## WOLFE v. SHELL PETROLEUM CORPORATION.

No. 1342.

Circuit Court of Appeals, Tenth Circuit.

April 8, 1936.

R. M. Rainey and Streeter B. Flynn, both of Oklahoma City, Okl. (Rainey, Flynn, Green & Anderson, of Oklahoma City, Okl., on the brief), for appellant.

John M. Holmes, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and Mc-DERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

On May 10, 1932, Wolfe commenced this action against Shell Petroleum Corporation, formerly the Roxana Petroleum

440

Corporation, and hereinafter called the Shell, in the District Court of Oklahoma County, Oklahoma, to recover interest on the value of certain royalty oil produced from a tract of land in Seminole County, Oklahoma, by the Amerada Petroleum Corporation, hereinafter called the Amerada, under an oil and gas lease, running from Wolfe to one Smith and assigned by the latter to Amerada.

The action was duly removed to the District Court of the United States for the Western District of Oklahoma.

The same lease was involved in Wolfe v. Texas Company (C.C.A.10) 83 F.(2d) 425 (decided April 8, 1936) and reference is made to our opinion in that case for the facts respecting the lease, the litigation concerning the title thereto, the transactions between Wolfe and the Amerada, and an existing general trade usage.

In his petition Wolfe set up the lease, the assignment thereof to the Amerada and further alleged:

"That * * * about December 1, 1926, * * * Amerada * * *, under the terms of said lease entered upon and commenced the production of oil by drilling wells upon said land, and from that time till the time of filing this suit has produced and sold from said land a large amount of crude oil; that of the crude oil produced and sold from said land by the Amerada * * *, the defendant, Shell * * *, received, obtained, took and run crude oil in the months beginning with January, 1927, to and including December, 1928, of the market value and price of at least one hundred sixty-three thousand thirty-two and 26/100 ($163,032.26) dollars; that at least seven-twelfths (7/12) of one-eighth (1/8) of said oil belonged to this plaintiff and was delivered to the pipe line of said defendant along with the seven-eighths portion of the Amerada Petroleum Corporation, and was received, retained and used by the said defendant, which said defendant promised to pay this plaintiff therefor, at the time the same was due and payable, which was each fifteen days during said time; that seven-twelfths of one-eighth of said total sum amounts to eleven thousand eight hundred eighty-seven and 75/100 ($11,887.75) dollars, which was due and owing to this plaintiff by said defendant, each fifteen days, as the said oil was received and run by said defendant, together with interest thereon at the rate of 6% per annum on the said proportion due this plaintiff at the end of each fifteen days, respectively, during said period of time, until paid."

Prior to January 16, 1927, the Amerada requested the Shell to arrange for pipe line facilities connected with the wells on the lease and to run a portion of the oil being produced.

On December 11, 1926, the Amerada executed and delivered to the Shell, a division order in the usual form covering the working interest.

From January 16, 1927, to December 31, 1927, there was produced from such land and run to the Shell, oil of the gross value of $163,016.54. The gross value of 7/12ths of the 1/8th thereof was $11,886.58.

On October 16, 1931, Wolfe wrote the Shell inquiring as to the agreement between it and the Amerada for the purchase of oil from the lease.

On October 22, 1931, Wolfe wrote a letter to the Shell in which he stated the Amerada had advised him one-half of his interest was now clear of litigation, and requested, if payment was to be made through the Amerada, that the Shell make payment to the Amerada, so the latter could transmit the amount due to him.

On October 23, 1931, the Shell wrote Wolfe it was withholding payment for the royalty oil because of the litigation respecting the title.

On October 26, 1931, Wolfe sent the Shell a copy of the mandate of the State Supreme Court and the judgment entered thereon in the District Court of Seminole County adjudging Wolfe to be the owner of 2/3rds of 11/12ths of the land, accompanied by a letter in which he requested payment of his portion of the royalty that had been cleared of adverse claims.

On November 6, 1931, the Shell wrote Wolfe it had referred the matter to its attorneys who had made requests for the abstracts.

On November 13, 1931, Wolfe in a letter to the Shell, requested payment of 7/12ths of the royalty.

On November 24, 1931, the Shell wrote Wolfe its attorneys were not yet satisfied as to his title, but were endeavoring to clear it up.

On November 26, 1931, Wolfe in a letter to the Shell stated the decision of the Supreme Court should be sufficient to satisfy it as to his title and demanded payment of his share of the royalty without further delay.

On December 9, 1931, Wolfe wrote the Shell requesting it to advise him the "legal reasons" for withholding his royalty payment.

On December 26, 1931, Wolfe wrote the Shell and enclosed a copy of stipulation and withdrawal of notice of appeal in the Fixico case, showing the judgment rendered in Wolfe's favor on September 12, 1931 had become final.

On December 31, 1931, the Shell sent Wolfe a copy of its attorneys' opinion on the abstracts, accompanied by a letter in which it offered to pay Wolfe, 7/12ths of the royalty amounting to $11,529.98, if he would furnish it an indemnity bond.

On January 2, 1932, Wolfe wrote a letter to Shell in which he demanded immediate payment to him of 7/12ths of the royalty.

On January 5, 1932, the Shell's attorneys wrote Wolfe requesting him to bear with them until they could secure additional information respecting the title.

On January 27, 1932, Wolfe wrote the Shell saying, that since the Amerada had furnished proofs of heirship requested, would it "now kindly send him check for 7/12ths of the royalty purchased from the Amerada?"

On February 5, 1932, the Shell wrote a letter to Wolfe, in which it advised him it was ready to make payment, stated it was enclosing a division order in duplicate, requested him to execute and return such order, and stated it would then direct payment by its accounting department.

On February 11, 1932, the Shell waived a division order, paid Wolfe $11,529.95 being the value of 7/12ths of the royalty oil, less the gross production taxes paid by the Shell, and agreed Wolfe might accept same without waiving his claim for interest.

It was stipulated that a short time after the commencement of the running of the oil to the Shell, it received an abstract of title to the lease, that it transmitted the abstract to its attorneys in due course, who rendered an opinion that the title to the royalty interest was in such condition it could not determine the ownership; that on receipt of Wolfe's letter of October 26, 1931, it pursued a further inquiry into the title with due diligence and was advised by its attorneys on February 2, 1932 that, subject to a small risk which was waived, the ownership of 7/12ths of the royalty was in Wolfe.

Wolfe made no demand on the Shell for payment of interest until February 11, 1932. Prior thereto he had acquiesced in the withholding of the royalty until the litigation respecting the title was terminated and had demanded payment for his share of the royalty oil sold to the Shell, in accordance with the contract of sale.

In his letter of October 26, 1931, he requested payment only of that portion of the royalty that had been freed from adverse claims by the final judgment in the Furniture Company Case (Wolfe v. Bass Furniture & Carpet Co.), 152 Okl. 125, 3 P.(2d) 895.

From a judgment in favor of the Shell, Wolfe has appealed.

 For the reasons stated in our opinion in Wolfe v. Texas Company, supra, we hold that Amerada had implied authority to sell the royalty oil to the Shell and that the existing general trade usage was valid and was incorporated into the contract of sale.

But if Amerada did not have authority in the first instance to sell Wolfe's share of the royalty oil, it undertook to sell it as Wolfe's agent and the question of ratification is presented.

Amerada advised Wolfe on January 29, 1927, that it was selling the royalty oil and gave him the names of the purchasers to whom the oil was being run. On February 18, 1927, Amerada advised Wolfe the purchasers were withholding payment for the royalty oil pending the litigation concerning the title. Wolfe raised no objection thereto and advised Amerada he would be glad to cooperate with it in clearing the title.

From February 1927 on, Amerada furnished Wolfe with monthly statements showing the amount and value of the royalty oil and the purchasers to whom it was being run and the amount run to each purchaser.

In his letter of October 22, 1931, Wolfe recognized the sale by the Amerada to the Shell by requesting payment in accordance with the terms of the contract of sale.

Wolfe knew the purchasers were withholding payment pending the litigation concerning the title and he made no demand on the Shell for payment until October 22, 1931, after he had been advised by the Amerada that title to one-half of his royalty interest was free of adverse claims. Again on October 26, 1931, Wolfe request-

ed the Shell to make payment for that portion of the royalty freed of adverse claims.

In order to prevent loss the oil either had to be stored or sold as it was produced. Storage by Wolfe was not practical. It could only be done by a large operator with storage facilities. Hence it had to be sold. No oil company would have purchased the oil unless it was permitted to withhold the purchase price pending determination of the litigation respecting the title or was given an indemnity agreement to protect it against loss. The sale under the circumstances was clearly for Wolfe's benefit.

■ One who with knowledge of the material facts concerning an act, done by one assuming to act as his agent without authority, voluntarily accepts the benefits flowing therefrom, thereby ratifies the act and makes it his own as though he had authorized it from the beginning; and silence under such circumstances that according to the ordinary experience and habits of men, one would naturally speak if he did not consent, is evidence from which assent may be inferred. Wolfe v. Texas Company, supra.

■ Knowledge requisite to ratification need not embrace every detail of the transaction. It is sufficient if the purported principal is apprised of all the material facts. Wolfe v. Texas Company, supra.

■ Parties to a contract are presumed to know a well defined trade usage generally adopted by those engaged in the business to which the contract relates. Wolfe v. Texas Company, supra.

Here Wolfe knew the oil was being sold and run as it was produced; the Amerada reported to him each month the names of the purchasers, the amount sold and run to each and the prices for which it was sold, and he is presumed to have known the general trade usage. These in our opinion constituted all the material facts.

Furthermore, Wolfe's petition in this case is predicated on the contract of sale made by Amerada.

In Oklahoma the measure of damages for conversion is fixed by section 9986, Okl. St.1931, which provides:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First. The value of the property at the time of the conversion, with the interest from that time; or,

"Second. Where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and,

"Third. A fair compensation for the time and money properly expended in pursuit of the property." [1]

■ Where the plaintiff has elected to waive the conversion and sue in assumpsit on implied contract the measure of damages is the benefit the wrongdoer has received and is generally held to be the value of the property on the date of the conversion with interest from that date.[2]

Section 198, Okl.St.1931, in part reads as follows:

"The petition must contain: * * *

"Second. A statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition.

"Third. A demand of the relief to which the party supposes himself entitled. If the recovery of money be demanded, the amount thereof shall be stated; *and, if interest thereon be claimed, the time from which interest is to be computed shall also be stated.*" (Italics ours.)

■ Therefore, if Wolfe had predicated his action on conversion he would have alleged the value of the royalty oil at the times of the several conversions and claimed interest on such values from the dates of the conversions or would have sought the highest market value between the dates of the conversions and the verdict; and if he had predicated it on implied contract based on waiver of conversion he would have alleged the value of the royalty oil at the times of the several conversions and would have claimed interest on such values from the dates of the conversions. Instead he alleged the sale of the

---

[1] U. S. Cities Corporation v. Sautbine, 126 Okl. 172, 259 P. 253, 54 A.L.R. 1152; Clark v. Slick Oil Co., 88 Okl. 55, 211 P. 496; Denker v. Kay County Gas Co.; 114 Okl. 135, 244 P. 42.

[2] Felder v. Reeth (C.C.A. 9) 34 F.(2d) 744, 748, 97 A.L.R. 244; Michigan Cent. R. Co. v. State, 85 Ind.App. 557, 155 N. E. 50; Downs v. Finnegan, 58 Minn. 112, 59 N.W. 981, 982, 49 Am.St.Rep. 488; Bowen v. Detroit United Ry., 212 Mich. 432, 180 N.W. 495, 496, 497; Gulf Coal & Coke Co. v. Musgrove, 195 Ala. 219, 70 So. 179, 180; Moore v. Richardson, 68 N.J.Law, 305, 53 A. 1032, 1033. Note. Ann.Cas.1913D, 239.

oil by the Amerada to the Shell, the delivery thereof, the promise of the Shell to pay the "market value and price" of the oil when it was due and payable, to-wit: at the end of each fifteen day interval during the period the oil was run. These allegations negative any claim of conversion or implied contract predicated on waiver thereof.

The petition in effect alleged the express contract with the provisions of the trade usage, which Wolfe claims was invalid, omitted. We are of the opinion it must be construed as setting up a cause of action based on the express contract of sale.

Where one undertakes, as agent, to sell the goods of another, without authority so to do, and the latter with knowledge of the material facts brings an action to recover the purchase price he thereby ratified the sale.[3]

We conclude that Wolfe by his acquiescence and his affirmative acts, ratified the sales made by the Amerada, if they were unauthorized when made.

It follows that payment for the royalty oil of Wolfe run to the Shell was not due until Wolfe furnished an abstract showing merchantable title in him and executed and delivered a division order to the Shell.

In the absence of a contract to the contrary, interest does not begin to run on an obligation to pay money until the obligation is due. Wolfe v. Texas Company, supra.

We conclude Wolfe was not entitled to recover interest on the purchase price or the value of the oil sold to Shell.

Affirmed.

[3] Arzuaga v. Gonzalez (C.C.A. 1) 239 F. 60; Clews v. Jamieson, 182 U.S. 461, 483, 21 S.Ct. 845, 45 L.Ed. 1183; Robb v. Vos, 155 U.S. 13, 42, 43, 15 S.Ct. 4, 39 L.Ed. 52; American Agricultural C. Co. v. Lowery, 227 Ala. 96, 148 So. 849, 850. Restatement of Law, Agency, § 97.